## BAUMHART v. McCLURE.

*Real property—Title of riparian owner—"Accretion" and "reliction" defined—Burden of proof on one claiming title thereby—Land may not be gained or lost by sudden avulsion—Title to submerged land restored by reliction or accretion—Title unimpaired where submerged lot reappears.*

1. "Accretion" is increase of real estate by gradual deposit by water of solid material, so as to create dry land of that previously submerged.
2. "Reliction" is increase of land by retreat or recession of water.
3. Claimant of lot by accretion or reliction as against one having connected chain of title thereto has burden of proof.
4. Riparian owner may gain land by accretion or reliction, or lose it by slow erosion but not by sudden avulsion as result of storm.
5. Land lost by submergence may be regained by reliction, and its disappearance by erosion may be returned by accretion, whereupon ownership temporarily lost may be restored.
6. Holder of legal title to lot lost by submergence *held* to have title on reappearance as against claimant by accretion or reliction.

(Decided  April  22,  1926.)

APPEAL:   Court of Appeals for Erie county.

*Messrs. Thompson, Hine & Flory, Mr. C. Dick,* and *Mr. Henry Hart,* for plaintiff.
*Mr. A. H. West,* for defendant.

RICHARDS, J.   This action involves the title to lot 434 in the village of Vermilion, and also the right to use a vacated alley, extending north and

south along the east side of said lot and adjoining lots, to Lake street, now vacated, and a claim to have an obstruction removed extending into said street.  The plaintiff appealed from the decree rendered in the court of common pleas.

The case naturally divides itself into two branches: First, relating to the title to lot 434; and, second, the right to use the vacated alley and street.  These questions will be disposed of in their order.

In 1837 the lot involved in this controversy, together with numerous adjoining lots, was platted and became a part of the village of Vermilion. Lot 434 is a water lot, abutting on Lake Erie. The plaintiff owns lots 433 and 432, which adjoin lot 434, and claims to own lot 434 by accretion or reliction.  It is conceded that the defendant has a complete chain of title, showing the record title to said lot 434, together with other lots along the lake, to be in her.  The facts necessary to determine this controversy are not seriously disputed.

It is reasonable to assume that when lot 434 was platted it was above the waters of Lake Erie. From 1837 to about 1853 it was on the tax duplicate, and was sold and conveyed several times, together with other adjoining lots.  After that date it was dropped from the tax duplicate for a number of years.  It is contended, and is doubtless true, that for forty or fifty years the lot was submerged by the lake, but a few years ago, probably by recession of the lake, resulting from the operation of the drainage canal at Chicago, or possibly from some other reason, the lot again appeared above the surface.  After its reappearance the holder of

the legal title claimed the lot and planted some trees thereon, and the plaintiff asserted title to it by reliction.

An approved definition of accretion is that it is the increase of real estate by the gradual deposit by water of solid material, whether mud, sand, or sediment, so as to cause that to become dry land which was before covered by water. Reliction has been defined to be an increase of the land by retreat or recession of the sea or a river. The law governing the rights of riparian owners to land by accretion or reliction is not in doubt.

In view of the fact that the defendant has a connected chain of title to lot 434 by deeds of conveyance, the burden of proof rests on the plaintiff to show such a state of facts as would deprive the defendant of that title. As a riparian owner may gain land by accretion or reliction, so he may likewise lose land by the slow process of erosion, and, if the land owned by the defendant, and her predecessors in title, was taken from them by the slow process of erosion, it would ordinarily be forever gone. This, however, would not be the case if lot 434 was washed away by a storm or storms resulting in a sudden avulsion. It is a matter of general knowledge that the shores of Lake Erie are subject to occasional storms in which the rushing of the waters cuts into the shore line and quickly washes away large tracts. The shore line, where these lots are located, is sandy, and lot 434 may have so disappeared. The record is silent on this question. In order to extinguish the defendant's title, the duty rested upon the plaintiff to show that lot 434 disappeared by the slow process

of erosion, for, if it disappeared suddenly, as a result of storms, and became for that reason submerged land, the defendant's title would still remain, and, when the land again reappeared above the surface, she could re-assert dominion and it would still be her property.

As stated in the opinion in *Mulry* v. *Norton,* 100 N. Y., 424, 3 N. E., 581, 53 Am. Rep., 206, it is not every disappearance of land by erosion or submergence that destroys the title of the true owner or enables one to acquire it, for the erosion must be accompanied by a transportation of the land beyond the owner's boundary to effect that result, or the submergence followed by such a lapse of time as will preclude establishing the identity of the property upon its reliction. Land lost by submergence may be regained by reliction, and its disappearance by erosion may be returned by accretion, upon which the ownership temporarily lost would be regained. See also 1 Ruling Case Law, 242.

As long ago as the time of Sir Matthew Hale it was laid down in Hargraves' Law Tracts de Jure Maris, 36, 37, as follows:

"If a subject hath land adjoining the sea, and the violence of the sea swallow it up, but so that yet there be reasonable marks to continue the notice of it, or though the marks be defaced, yet, if by situation and extent of quantity, and bounding upon the firm land, the same can be known, though the sea leave this land again, or it be by art or industry regained, the subject does not lose his property; and accordingly it was held by Cooke and Foster (7 Jac. C. B.), though the inundation

continue forty years.  *  *  *  But, if it be freely
left again by the reflux and recess of the sea, the
owner may have his land as before, if he can make
it out where and what it was; for he cannot lose
his propriety of the soil, though it be for a time
become part of the sea, and within the admiral
jurisdiction while it so continues."

This principle has been followed many times.
See the following cases: *Chicago* v. *Ward*, 169
Ill., 392, 48 N. E., 927, 38 L. R. A., 849, 61 Am. St.
Rep., 185; *Fowler* v. *Wood*, 73 Kan., 511, 85 P.,
763, 6 L. R. A., (N. S.), 162, 117 Am. St. Rep., 534;
*Gilbert* v. *Eldridge*, 47 Minn., 210, 49 N. W., 679,
13 L. R. A., 411; *Mulry* v. *Norton*, 100 N. Y., 424,
3 N. E., 581, 53 Am. Rep., 206; *Hughes* v. *Birney's
Heirs*, 107 La., 664, 32 So., 30; *Randolph* v. *Hinck*,
277 Ill., 11, 115 N. E., 182.

As the location and identity of lot 434 are clear-
ly shown, we must conclude that the title of the
defendant was not lost by submergence of 'the lot,
and on its reappearance above the surface of the
lake her title remains unimpaired.

The other branch of this case relates to the
right of the plaintiff to use the vacated alley and
the portion of Lake street which was vacated.  On
March 16, 1903, the village council of Vermilion
vacated the alley and the westerly end of Lake
street by ordinance, and that ordinance provides
that the right of way and easement of the owner of
any lot bounding or abutting shall not be obstructed
or impaired.  A wall, partly cement, partly rubble,
and partly boulders, has been built by the defend-
ant near the center of the alley.  The court finds
from the evidence that the plaintiff, by her con-

duct, is estopped from requiring the removal of that wall, except the end next to the lake, which is built of boulders and extends in a northwesterly direction onto the half of the alley adjoining her property. The boulder wall so extending and obstructing her access to the lake is in violation of her rights and should be removed. The southerly end of the wall is built of cement, and extends about seventeen feet into the vacated portion of Lake street. Plaintiff's conduct does not estop her from requiring the removal of that portion of the wall extending into Lake street, and this should be done.

*Decree accordingly.*

WILLIAMS and YOUNG, JJ., concur.