**UNITED STATES of America,**
**Plaintiff,**

**v.**

**461.42 ACRES OF LAND IN LUCAS COUNTY, OHIO, Horizon Enterprises, Inc., et al., Defendants.**

**Civ. No. 8674.**

United States District Court
N. D. Ohio, W. D.

Sept. 26, 1963.

Merle M. McCurdy, U. S. Atty., Cleveland, Ohio, John G. Mattimoe, Asst. U. S. Atty., Toledo, Ohio, Anthony C. Liotta and Anthony R. Sluga, Dept. of Justice, Washington, D. C., for plaintiff.

Critchfield, Critchfield, Critchfield & Johnston, Wooster, Ohio, Henry B. Critchfield and Walter C. Grosjean, Wooster, Ohio, of counsel, for defendant Horizon Enterprises, Inc.

William B. Saxbe, Atty. Gen., Donald A. DeCessna, Asst. Atty. Gen., Dept. of Natural Resources, Columbus, Ohio, for State of Ohio.

GREEN, District Judge.

These proceedings were held for the purpose of resolving title to a tract of land, known as Pintail Marsh, appropriated by the United States. The entire tract comprises approximately 461 acres and borders on Lake Erie.

When the original complaint and declaration of taking were filed Horizon Enterprises, Inc. was alleged to be the owner of the tract being taken.

It was thereafter developed, during the course of pre-trial proceedings, that approximately 210 acres of the tract in question have been, for the most part, under water since 1929. The United States thereupon questioned whether the submerged lands might belong to the State of Ohio, and moved to add the State as a new party defendant. The motion was granted, and a hearing set on the question of title.

Certain basic essentials, stated at this point, will aid in an understanding of the question before the Court.

Defendant Horizon Enterprises, Inc. had, at the time of the taking of the

property by the Government, record title to the entire 461-acre tract known as Pintail Marsh, including that portion under water. Until 1929 the entire tract had been dry or marsh land. However, in 1929 the 210 acres became submerged, and have remained so to this time. The evidence disclosed that on occasion the area might become free of water as a result of varying lake level and wind action. Based on all the evidence, the Court concludes that normally the 210 acres are submerged, with the exception of a small offshore island.

The State of Ohio claims title to the 210 acres by virtue of § 123.03 Ohio Revised Code, which provides that title to the waters of Lake Erie and the soil thereunder, extending from the southerly shore of Lake Erie to the international boundary, shall be vested in the State of Ohio.

■■ It is settled law that a riparian owner may lose land by the slow process of erosion, and his title thereto will be extinguished. Under the law of Ohio, however, if land is lost "by a storm or storms resulting in a sudden avulsion", there is no loss of title. Baumhart v. McClure, 21 Ohio App. 491, 493, 153 N.E. 211 (1926).

■ The term "erosion" is generally understood to mean a gradual washing away of land bordering on water by the action of the water, 56 Am.Jur. Waters, § 476. In contrast, the term "avulsion" connotes a sudden and perceptible loss of land by the action of water, 56 Am. Jur. Waters, § 476.

The controversy thus resolves itself to a determination of whether the 210 acres were submerged as a result of erosion or avulsion. If the former, title was in the State of Ohio; if the latter, title was in Horizon Enterprises, Inc., as of the day of taking by the Government.

The Pintail Marsh, the subject tract, was at one time in the early 1900's a part of a large tract known as the Metzger Farms. The entire area is located along the shores of Lake Erie about 20 miles east of Toledo, Ohio. There is a town-

ship known as Bono approximately 4 miles to the west of the marsh area and 2½ miles inland from the Lake Erie shores.

At the time when the history of the Metzger Farms first becomes pertinent to this action, it had a beach frontage of approximately 1½ miles. Behind this frontage the area was commonly denominated as the "north farm" and the "middle farm".

The "north farm" is now known as Metzger Marsh, and was the western portion of the Metzger land along the lake front. This farm was bounded on the west by the "Howard Farms", and separated therefrom by a canal known as "Ward Canal". The beach area in front of the Howard Farms is known as Reno Beach.

The "middle farm" is now known as Pintail Marsh, the tract here under consideration. The "middle farm" had lake frontage of approximately ⅞ths of a mile and was bounded on the west by the "north farm" and on the east by other private property identified as "Willow Point". The "middle farm" extended inland approximately one mile on its west boundary and one-half mile on its east boundary to Veler Road, which separated the "middle farm" from its neighbor to the south, the Metzger "south farm".

The "south farm" constituted the remainder of the Metzger property and was located entirely inland, with its north boundary being Veler Road.

The trial evidence concerning the history of the Metzger Farms and Pintail Marsh was obtained, in the main, from long time residents of the area. By piecing together their recollections a rather complete history has been achieved.

From all of the evidence the Court finds that about 1910 there was a sand beach along the shore line at the most northerly boundary of the 461 acres of the "middle farm" now known as the Pintail Marsh. The sand beach was from 50 to 100 feet wide. The land south of the beach was lower than the level

of the lake in various areas, for a considerable distance inland and was in the main marsh land.

At or about the year 1910 a dike was built on the inland side of the sand beach along both the Metzger "north" and "middle" farms, and the marsh land thereafter was drained and used for farming. The evidence indicated that the top of the dike was about 20 feet in width and about 8 feet above the lake level. All of the area of the Metzger "north" and "middle" farms, right up to the edge of the dike, was used for farming purposes after the year 1910, producing a variety of field and garden crops.

For a number of years the shoreline along the Metzger farms, including the sand beach and the dike, was assailed by spring storms, often referred to by the various witnesses as "northeasters".

Counsel for the United States and the State of Ohio attempted to show that these storms eroded the protective sand beach area and the dikes. They claimed that the submergence of the approximate 210 acres in dispute did in fact result from erosive wave action upon the shores of defendant's property and such erosive wave action was aggravated by forces of nature characteristic of the Lake Erie geography. They further claimed that it was a natural occurrence to have storms in this area and that gradually as a consequence of the multiplicity of storms and the actions of the wind and waters, the sand beach and the dike area eroded away causing the land to the rear to be covered with water.

There was considerable testimony on this point. The evidence indicated that for a number of years after 1910 the beach area started to wash away and after each storm some damage was done to the dikes so that it was necessary to make repairs. To protect the land area concrete was poured on the inside of and along the dikes. Dredges were brought in to repair the damage and wooden piles were driven along the dike and out from the sand beach into the lake to create jetties to protect the beach area.

In the year 1919, following a severe storm, the dike was breached and water entered into the lands of the Metzger farm. The damage to the dike was repaired and the land restored to farming use and was so used until the year 1929.

In May of 1929 a severe northeastern storm broke over the area of the Metzger farm, and when it had subsided the area now known as Pintail Marsh and the surrounding area for a few miles around was flooded and under water.

The records of the Toledo, Ohio Weather Bureau show that on May 2, 1929 thunder storms took place in the area which deposited 1.6 inches of rain between 11:00 A.M. and midnight. One inch of rain fell between 11:00 A.M. and 4:00 P.M. and .38 inches of rain fell between 2:00 and 3:00 P.M. This downpour was accompanied by northeast winds ranging around 35 miles per hour.

The storm tore large holes in several areas of the dike and washed out a great deal of the sand beach. As an aftermath of the storm the entire Pintail Marsh area to its southern boundary at Veler Road lay under water and remained that way for some time. Between 1945 and 1950 a new dike was built along a line south of the original dike which had been breached in the 1929 storm. This new dike then separated the submerged 210 acres, here under consideration, from the remaining Pintail Marsh lands behind it, which were reclaimed after the new dike was established. The original dike was not restored or rebuilt.

Several of the witnesses testified as to the severity and intensity of the storm.

Milton Weidner stated that "the storm was the worst they ever had."

Leo Cousino stated, "The damage done by this storm was beyond repair."

Glen Shoemaker spoke of the occurrence as a "real storm" during which "practically everything went."

Joe Chio referred to this storm as "the big blow of 1929."

Murle Kuhn testified that the storm "tore the banks and everything up" and that sections of the dike were cut right

out and the land behind opened to the lake.

Other witnesses testified as to the severity of the storm and the fact that the beach and the dike both gave way during the storm causing the land behind to become inundated. Some of the witnesses recalled that the storm caused flooding as far inland as the town of Bono.

 It is the Court's conclusion, based on the evidence, that the submergence of the Pintail Marsh area resulted from the dike and sand beach being suddenly and violently breached and destroyed by the storm of May, 1929, and that the 210 acres under consideration and now under water became that way as the result of an avulsion. Therefore, title to the 210 acres remained vested in the title holder and was the property of Horizon Enterprises, Inc. at the time of the taking by the Government.

While it is true that the sand beach and dike had been subjected to the natural forces of the seasonal storms for years prior to May, 1929, there was not sufficient evidence to indicate that they were on the verge of disappearance or collapse at that time due to erosion. To the contrary, the evidence indicated that the dike was being maintained in a constant state of repair.

The inundation of the land was not caused by the gradual process of erosion, but rather the loss was due to a "storm or storms resulting in a sudden avulsion." Baumhart v. McClure, supra.

It is interesting to note the similarity of language between that used by the witnesses in this action and that adopted by the Supreme Court of Illinois in Wall v. Chicago Park Dist., 378 Ill. 81, 37 N.E. 2d 752, 760 (1941):

"The evidence discloses that a severe storm in 1929 'broke up the breakwaters and everything.' * * * This destruction of land was an avulsion."

There is other evidence before the Court which indicates that subsequent to May, 1929 the Pintail Marsh has been considered as private property by the Government authorities.

The Metzger Marsh, being that area formerly known as the "north farm", was purchased by the State of Ohio in 1954 for a total of $62,550. Part of the property so purchased was submerged land, flooded in the storm of May, 1929, at the same time as the submergence of the Pintail Marsh.

Appended to a special report of the United States Department of Interior concerning development plans for the Metzger Marsh are a number of maps. The Pintail Marsh appears as part of maps 2 and 3, and the label "private" is shown as to the Pintail property.

The Metzger Marsh area is also mentioned in a report to the Congress from the Secretary of the Army regarding erosion along the Lake Erie shoreline. In that report it is stated that the Pintail area is privately owned (p. 15) and consideration is given to the State of Ohio acquiring this private property (p. 36). Plate No. 20 to that report has the "private" label shown as to the Pintail property.

Although not essential to the issue at hand, it has been contended that the title holder could not, as a practical matter, reclaim the lands now submerged.

This contention is at odds with the suggestions of the Department of the Interior, found in the reports previously mentioned, concerning reestablishment of a dike surrounding the Metzger Marsh and across both Metzger and Pintail, if Pintail Marsh could be acquired.

It is also refuted by evidence concerning a flood which buried the Howard Farms, at Reno Beach, under three to five feet of water after its dike was breached by a storm in 1952. The land lay submerged for five months while the dike was rebuilt. The water was then pumped out and the land restored to farm use.

This Memorandum will be adopted as Findings of Fact and Conclusions of

Law. An order will be prepared declaring Horizon Enterprises, Inc. to have been the owner of the entire tract being taken in this action and dismissing the State of Ohio as a party defendant herein.