[Cite as *State ex rel. Merrill v. Ohio Dept. of Natural Resources,* 130 Ohio St.3d 30, 2011-Ohio-4612.]

THE STATE EX REL. MERRILL, TRUSTEE, ET AL., APPELLEES;

TAFT, APPELLEE AND CROSS-APPELLANT, *v*. OHIO DEPARTMENT OF NATURAL

RESOURCES ET AL., APPELLANTS AND CROSS-APPELLEES.

[Cite as *State ex rel. Merrill v. Ohio Dept. of Natural Resources,*

130 Ohio St.3d 30, 2011-Ohio-4612.]

*Land held in public trust abutting private property—The territory of Lake Erie*
*held in trust by the state of Ohio for the people of the state extends to the*
*natural shoreline, which is the line at which the water usually stands when*
*free from disturbing causes.*

(No. 2009-1806—Submitted February 1, 2011—Decided September 14, 2011.)

APPEAL AND CROSS-APPEAL from the Court of Appeals for Lake County,

Nos. 2008-L-007 and 2008-L-008, 2009-Ohio-4256.

_____

SYLLABUS OF THE COURT

1.  A party to an action has standing to appeal from a judgment when it is an
    independent party to an action and has been aggrieved by the final order
    from which it seeks to appeal.

2.  When an organization demonstrates that it has a claim or defense that shares a
    common question of law or fact with the main action and that intervention
    will not unduly delay or prejudice the adjudication of the rights of the
    original parties, it meets the requirements of Civ.R. 24(B)(2) for
    permissive intervention.

3.  The territory of Lake Erie held in trust by the state of Ohio for the people of
    the state extends to the natural shoreline, which is the line at which the
    water usually stands when free from disturbing causes. (*Sloan v. Biemiller*
    (1878), 34 Ohio St. 492, and *State v. Cleveland & Pittsburgh RR. Co.*

(1916), 94 Ohio St. 61, 113 N.E. 677, approved and followed; R.C. 1506.10 and 1506.11, construed.)

_____

**O'DONNELL, J.**

**{¶ 1}** We are asked to resolve three issues on appeal and cross-appeal: first, whether the state of Ohio, as distinct from the Ohio Department of Natural Resources ("ODNR"), has standing to appeal from the decisions of the trial and appellate courts in this case; second, whether the court of appeals properly held that the trial court did not abuse its discretion in permitting the National Wildlife Federation and the Ohio Environmental Council to intervene in this action; and third, whether the appellate court identified the proper boundary between property abutting Lake Erie owned by private individuals and the territory of Lake Erie held in trust by the state for all Ohioans.

**{¶ 2}** Regarding the standing issue, we conclude that despite ODNR's adoption of a conciliatory lis pendens posture agreeing not to enforce its controversial lease policy pending the court's determination of the boundary issue and its failure to appeal the judgment of the trial court, it remains a party to this case; the state of Ohio, a separately named party, had standing to appeal the trial court judgment entered against it affecting the territory of Lake Erie.

**{¶ 3}** On the intervention question, we agree with the conclusion of the court of appeals that the National Wildlife Federation and the Ohio Environmental Council are proper parties to this action and that the trial court did not abuse its discretion in permitting them to intervene.

**{¶ 4}** Finally, regarding the shoreline issue, Ohio law with respect to the territory of Lake Erie held in trust by the state and the rights of littoral-property owners has been settled for more than a century, and we see no reason to change the existing law. Based on opinions of this court from as early as 1878 and the Ohio General Assembly's statement of public policy enunciated in the Fleming

Act in 1917, we conclude that the territory of Lake Erie held in trust by the state of Ohio for the people of Ohio extends to the "natural shoreline," which is the line at which the water usually stands when free from disturbing causes.

### Factual and Procedural History

{¶ 5} The pleadings in this case allege that ODNR instituted a policy prohibiting littoral-property owners from exercising property rights over all land lakeward of the ordinary high-water mark, despite the inclusion of that area of land in their respective deeds, unless the owner entered into a lease agreement with ODNR and paid a fee for its use.

{¶ 6} In May 2004, Robert Merrill, as trustee for the Diane N. Merrill Living Trust, the Ohio Lakefront Group, Inc., a nonprofit corporation representing lakefront-property owners, and several other individually named lakefront-property owners (collectively referred to as "the Merrill plaintiffs") filed a complaint for declaratory judgment and mandamus in the Lake County Common Pleas Court against ODNR, its director, and the state of Ohio, seeking declarations that owners of property abutting Lake Erie hold title to the land "between [the ordinary high-water mark] and the actual legal boundary of their properties * * * as defined by their deeds" and that the public trust does not include nonsubmerged lands; alternatively, they sought a writ of mandamus to compel ODNR to commence appropriation proceedings or to compel the state of Ohio to compensate them for its alleged taking of their property. They subsequently filed an amended complaint containing the same counts. The individually named lakefront-property owners also filed attachments to the first amended complaint, containing copies of their deeds and identifying the property's lakeward boundary, although those descriptions varied from deed to deed, i.e., "a distance of 374.0 feet to the shore of Lake Erie," "to a point in the low water mark of Lake Erie," "145 feet to a point in the water's edge of Lake

Erie," "to Lake Erie," "a distance of 293.04 feet to the shore of Lake Erie," and "to the shore of Lake Erie."

{¶ 7} Separately, Homer S. Taft, L. Scot Duncan, and Darla J. Duncan ("the Taft plaintiffs") filed the next consecutively numbered case in the Lake County Common Pleas Court, claiming ownership of their land to the *ordinary low-water mark* of Lake Erie. The trial court consolidated that action with the suit filed by the Merrill plaintiffs.

{¶ 8} ODNR and the state counterclaimed, seeking a declaration that the state of Ohio holds the lands and waters of Lake Erie to the *ordinary high-water mark*, as set by the United States Army Corps of Engineers in 1985, in trust for the people of Ohio, subject only to the paramount authority retained by the United States for the purposes of commerce, navigation, national defense, and international affairs.

{¶ 9} In June 2006, pursuant to a joint stipulation of all parties in *Merrill*, the trial court certified a class action as to the declaratory-judgment count of the Merrill complaint, with the class consisting of owners of Ohio property bordering Lake Erie. The court stayed the mandamus claims pending resolution of the declaratory-judgment claim.

{¶ 10} Subsequently, the National Wildlife Federation and the Ohio Environmental Council, nonprofit organizations committed to conserving natural resources and whose members make recreational use of the shores and waters of Lake Erie, sought to intervene as defendants and counterclaimants, asserting that the state holds the lands and waters of Lake Erie in trust for the public to the ordinary high-water mark. The trial court permitted them to intervene.

{¶ 11} ODNR and the state then moved for summary judgment on the declaratory-judgment claim, urging, inter alia, that the public-trust territory of Lake Erie extends to the ordinary high-water mark, as identified by the United States Army Corps of Engineers in 1985. The National Wildlife Federation and

the Ohio Environmental Council filed a joint motion for summary judgment, concurring in and adopting the bases for summary judgment advanced by ODNR and the state.

{¶ 12} The Merrill and Taft plaintiffs each filed cross-motions for summary judgment. In response to the cross-motions for summary judgment, ODNR advised the court that it welcomed resolution of the controversy and posited that it "must and should honor the apparently valid real property deeds of the plaintiff-relator lakefront owners unless a court determines that the deeds are limited by or subject to the public's interests in those lands or are otherwise defective or unenforceable." ODNR further explained that "acting with the consent and direction of" the governor, it "will discharge its statutory duties and will adopt or enforce administrative rules and regulatory policies with the assumption that the lakefront owners' deeds are presumptively valid." It also represented to the court that while it "will require owners who wish to build structures along the shores of Lake Erie that could impact coastal lands to obtain permits before commencing any such construction[,] * * * it will no longer require property owners to lease land contained within their presumptively valid deeds."

{¶ 13} After review, the trial court granted partial summary judgment to the Merrill and Taft plaintiffs and denied summary judgment to ODNR, the state, the National Wildlife Federation, and the Ohio Environmental Council, concluding that the public trust neither extended to the ordinary high-water mark nor terminated at the low-water mark; rather, the trial court determined that the boundary of the public-trust territory is "a moveable boundary consisting of the water's edge, which means the most landward place where the lake water actually touches the land at any given time." The trial court opinion also reformed the legal descriptions in deeds held by littoral-property owners containing legal

descriptions that extended the property into the lake to extend the property only to the water's edge.

**{¶ 14}** The trial court further concluded: "Defendants-Respondents and Intervening Defendants have failed, as a matter of law, to show that the *landward* boundary of the public trust territory in Ohio along the Lake Erie shore is the Ordinary High Water Mark of 573.4 IGLD (1985), and Plaintiffs-Relators and Intervening Plaintiffs have failed to show that the *lakeward* boundary of the public trust territory in Ohio along the Lake Erie shore is the Ordinary Low Water Mark. The court declares that the law of Ohio is that the proper definition of the boundary line for the public trust territory of Lake Erie is the water's edge, wherever that moveable boundary may be at any given time, and that the location of this moveable boundary is a determination that should be made on a case-by-case basis." (Emphasis sic.)

**{¶ 15}** The trial court order included language from Civ.R. 54(B), "finding that there is no just reason for delay," thereby creating a final, appealable order.

**{¶ 16}** The state of Ohio, the National Wildlife Federation, and the Ohio Environmental Council appealed to the Eleventh District Court of Appeals, and the Merrill plaintiffs and Taft, individually, cross-appealed, all challenging the trial court's determination that the public-trust territory of Lake Erie is a moveable boundary consistent with the water's edge. Additionally, Taft argued that the court erred in allowing intervention. Notably, ODNR neither filed a notice of appeal to the court of appeals nor joined in the state's notice of appeal. Its failure to separately appeal prompted the court of appeals, during oral argument, to question whether the state of Ohio had appellate standing before that court.

**{¶ 17}** The appellate court concluded that the state of Ohio lacked appellate standing without ODNR as an appellant, and it affirmed the trial court's

6

holdings regarding the intervening parties and the boundary of the public trust, but vacated the trial court's reformation of the littoral owners' deeds.

{¶ 18} In holding that the state of Ohio lacked standing, the court of appeals cited R.C. 109.02 for the proposition that the Ohio attorney general could "only act at the behest of the governor, or the General Assembly," and in this case, the "attorney general represented the state due to the activities of ODNR, which department is under the authority of the governor," who no longer supported the position taken by ODNR. *State ex rel. Merrill v. Ohio Dept. of Natural Resources,* 11th Dist. Nos. 2008-L-007 and 2008-L-008, 2009-Ohio-4256, ¶ 44. Thus, because the governor "ordered ODNR to cease those activities that made it a party to the action," the appellate court found "no authority for the attorney general to prosecute this matter on his own behalf" and concluded that the state "no longer has standing in this matter." Id. Thus, the court of appeals ordered the state's assignments of error and briefs stricken.

{¶ 19} Regarding intervention, the appellate court held that the trial court had correctly permitted the National Wildlife Federation and the Ohio Environmental Council to intervene because they met the requirements for intervention as of right pursuant to Civ.R. 24(A) in that the relief sought by the Merrill and Taft plaintiffs "would extinguish the rights" of their members to "make recreational use of the shore along Lake Erie below the ordinary high water mark." Id. at ¶ 114. The court also concluded that the intervening parties met the requirements for permissive intervention pursuant to Civ.R. 24(B) because they demonstrated that their defense and counterclaim factually and legally related to the claims asserted by the Merrill and Taft plaintiffs.

{¶ 20} The court of appeals also affirmed the trial court's determination regarding the boundary of the public trust, holding that the boundary is the shoreline, which it defined as "the actual water's edge." Id. at ¶ 127.

**{¶ 21}** In its opinion, the court of appeals erroneously stated that the question regarding the boundary of the public trust is a matter of first impression in Ohio. Id. at ¶ 1. It is not. That question has been a matter of settled law in Ohio for more than a century—since 1878—when this court first announced the law in a case that called for Lake Erie as the boundary in a deed of conveyance, and when it subsequently clarified that decision in 1916, and when the legislature, in response to our request, thereafter codified Ohio law regarding the public trust in Lake Erie by enacting the Fleming Act in 1917.

**{¶ 22}** Despite this body of law, the court of appeals concluded: "Based upon its decisions, the Supreme Court has identified that the waters, and the lands under the waters of Lake Erie, when submerged under such waters, are subject to the public trust, while the littoral owner holds title to the natural shoreline. As we have identified, the shoreline is the line of contact with a body of water with the land *between the high and low water mark.* Therefore, the shoreline, that is, the actual water's edge, is the line of demarcation between the waters of Lake Erie and the land when submerged thereunder held in trust by the state of Ohio and those natural or filled in lands privately held by littoral owners." (Emphasis sic.) Id. at ¶ 127.

**{¶ 23}** ODNR, its director, and the state jointly appealed to this court, as did the National Wildlife Federation and the Ohio Environmental Council; individually, Taft cross-appealed. We accepted jurisdiction over these appeals, which collectively assert six propositions of law and raise the following three issues: whether the state of Ohio has appellate standing, whether the National Wildlife Federation and the Ohio Environmental Council are proper intervening parties, and whether the territory of the public trust extends to the ordinary high-water mark, as claimed by the state and the environmental groups, or the low-water mark, as claimed by Taft.

**Standing to Appeal**

{¶ 24} The state presents a twofold argument to support its position that it had standing to appeal the decision of the trial court, which declared that the boundary of the public trust is the water's edge, and the decision of the court of appeals, which affirmed the trial court's declaration. First, the state claims that it had standing because it is an independent party to this action, and the judgment entered against it is adverse to its interests. Second, it maintains that the Ohio attorney general is empowered by the common law and statutes to represent the state when it is a named party.

{¶ 25} The Merrill and Taft plaintiffs collectively argue that the state lacked standing to appeal because R.C. 1506.10 designates ODNR as the agency responsible for the enforcement of the state's public-trust rights in Lake Erie, and here, ODNR complied with a gubernatorial directive to cease its active participation in the matter and did not appeal the trial court's judgment to the court of appeals. Thus, they assert, ODNR's waiver of its appellate rights foreclosed the state from appealing.

{¶ 26} Separately, Taft argues that the court of appeals correctly determined that the state lacked standing because R.C. 109.02 precludes the attorney general from representing the state in the court of appeals absent authorization from the governor or the General Assembly, and the governor's directive to ODNR negates any claim by the attorney general of authorization to represent the state in this matter. Taft further contends that the General Assembly enacted R.C. 109.02 in abrogation of the common law, and therefore, the attorney general lacks nonstatutory authority to act on behalf of the state.

{¶ 27} "Standing is a preliminary inquiry that must be made before a court may consider the merits of a legal claim." *Kincaid v. Erie Ins. Co.*, 128 Ohio St.3d 322, 2010-Ohio-6036, 944 N.E.2d 207, ¶ 9, citing *Ohio Pyro, Inc. v. Dept. of Commerce,* 115 Ohio St.3d 375, 2007-Ohio-5024, 875 N.E.2d 550, ¶ 27, and

*Cuyahoga Cty. Bd. of Commrs. v. State,* 112 Ohio St.3d 59, 2006-Ohio-6499, 858 N.E.2d 330, ¶ 22. Standing is a question of law, so we review the issue de novo. *Kincaid* at ¶ 9.

{¶ 28} To have appellate standing, a party must be "aggrieved by the final order appealed from." *Ohio Contract Carriers Assn., Inc. v. Pub. Util. Comm.* (1942), 140 Ohio St. 160, 23 O.O. 369, 42 N.E.2d 758, syllabus; see also *In re Guardianship of Santrucek* 120 Ohio St.3d 67, 2008-Ohio-4915, 896 N.E.2d 683, ¶ 5; *Willoughby Hills v. C.C. Bar's Sahara, Inc.* (1992), 64 Ohio St.3d 24, 26, 591 N.E.2d 1203. Cf. *Forney v. Apfel* (1998), 524 U.S. 266, 271, 118 S.Ct. 1984, 141 L.Ed.2d 269, quoting *United States* v. *Jose* (1996), 519 U.S. 54, 56, 117 S.Ct. 463, 136 L.Ed.2d 364 ("a party is 'aggrieved' [by] and ordinarily can appeal [from] a decision 'granting in part and denying in part the remedy requested' ").

{¶ 29} In this case, both the Merrill and Taft plaintiffs sued both the state of Ohio and ODNR, seeking a declaration regarding the interest of the state as trustee over the public trust. In addition, count three of Merrill's first amended complaint sought a writ of mandamus to compel the state to pay compensation as a result of ODNR's alleged taking. Thus, the pleadings verify that the state became an independent party to the underlying action. It is also an aggrieved party; the trial court's determination regarding the boundary of the public trust, which the court of appeals affirmed, is adverse to the state's position, and the trial court's ruling denied the relief sought by the state in its counterclaim for declaratory judgment. Accordingly, we conclude that the state of Ohio had standing to appeal from the judgments of both the trial court and appellate court due to its status as an aggrieved party.

{¶ 30} Nor does R.C. 1506.10 deprive the state of the ability to appeal in this case. That statute designates ODNR as "the state agency in all matters pertaining to the care, protection, and enforcement of the state's rights designated in this section." It also provides that "[a]ny order of the director of [ODNR] in

any matter pertaining to the care, protection, and enforcement of the state's rights in that territory is a rule or adjudication within the meaning of sections 119.01 to 119.13 of the Revised Code." Here, however, the state appealed from a decision entered in a declaratory-judgment action, and a matter that seeks a declaration of rights is different from one that pertains to "the care, protection, and enforcement" of those rights. We do not construe R.C. 1506.10 as prohibiting the state from litigating its interests in the public trust, including its right to appeal from a judgment that adversely affects those interests.

{¶ 31} Similarly, the court of appeals erroneously determined that the attorney general lacked standing to appeal on behalf of the state. We recognize that pursuant to a gubernatorial directive, ODNR did not appeal the judgment of the trial court. As a separate party, however, the state did not abandon its independent right to appeal. By appealing from the trial court's judgment, the state preserved its interest in protecting what it perceives to be the public trust.

{¶ 32} Taft also maintains that the attorney general lacked standing to appeal because pursuant to R.C. 109.02, absent direction from the governor, the attorney general had no independent authority to act on behalf of the state.

{¶ 33} In Ohio, the attorney general is a constitutional officer. Section 1, Article III, Ohio Constitution. The General Assembly has also recognized that the attorney general is the chief law officer "for the state and all its departments." R.C. 109.02. That statute sets forth the attorney general's statutory duties: "The attorney general shall appear for the state in the trial and argument of all civil and criminal causes in the supreme court in which the state is directly or indirectly interested. When required by the governor or the general assembly, the attorney general shall appear for the state in any court or tribunal in a cause in which the state is a party, or in which the state is directly interested. Upon the written request of the governor, the attorney general shall prosecute any person indicted for a crime."

{¶ 34} The state and federal constitutions "were adopted with a recognition of established contemporaneous common law principles; and * * * they did not repudiate, but cherished, the established common law." *State v. Wing* (1902), 66 Ohio St. 407, 420, 64 N.E. 514. In deference to that principle, "the General Assembly will not be presumed to have intended to abrogate a settled rule of the common law unless the language used in a statute clearly imports such intention." *State ex rel. Hunt v. Fronizer* (1907), 77 Ohio St. 7, 16, 82 N.E. 518.

{¶ 35} This court recently addressed the common-law powers of the attorney general in relation to R.C. 109.02 in *State ex rel. Cordray v. Marshall*, 123 Ohio St.3d 229, 2009-Ohio-4986, 915 N.E.2d 633. In rejecting an argument similar to Taft's position herein, we concluded that nothing in R.C. Chapter 109 abrogated the attorney general's common-law power to commence a prohibition action that sought to compel a common pleas judge to vacate an entry issued in a criminal case. Id. at ¶ 18, 23.

{¶ 36} Guided by that analysis, we reach the same result and hold that nothing in R.C. Chapter 109 appears to abrogate the attorney general's common-law power to appeal on behalf of the state from an adverse judgment. Cf. *Northeast Ohio Coalition for the Homeless & Serv. Emps. Internatl. Union, Local 1199 v. Blackwell* (C.A.6, 2006), 467 F.3d 999, 1008 (attorney general permitted to intervene on behalf of the state in an appeal of a judgment from which the secretary of state did not wish to pursue an appeal). Thus, Taft's position is not well taken.

{¶ 37} Accordingly, we hold that a party to an action has standing to appeal from a judgment when it is an independent party to an action and has been aggrieved by the final order from which it seeks to appeal. Hence, the state of Ohio has standing to appeal in this case, as it is an independent party against which an adverse judgment had been rendered.

**Intervention**

{¶ 38} The court of appeals concluded that the National Wildlife Federation and the Ohio Environmental Council could intervene either as of right or with permission. *Merrill*, 2009-Ohio-4256, ¶ 115, 118. On cross-appeal, Taft maintains that the appellate court abused its discretion in affirming the trial court's decision to permit the National Wildlife Federation and the Ohio Environmental Council to intervene, contending that these organizations neither met the requirements of Civ.R. 24(A)(2) for intervention as of right, as they failed to demonstrate an interest relating to the property or transaction that is the subject of the action, nor met the requirements of Civ.R. 24(B) for permissive intervention, in that they failed to demonstrate that they had a claim or defense that shared a common question of law or fact with the main action.

{¶ 39} In response, the National Wildlife Federation and the Ohio Environmental Council claim that they met the requirements for intervention as of right pursuant to Civ.R. 24(A)(2) because some of their members make recreational use of the land that is the subject matter of this action. In addition, some of their members are Ohioans and are thus beneficiaries of the public trust and have a legally protectable interest in public-trust lands. They further contend that the relief requested by the littoral owners would extinguish their members' right to use the shore of Lake Erie for recreational purposes.

{¶ 40} These organizations also maintain that they have demonstrated the existence of common questions of law or fact between their claimed interest in and right to use the shore and the underlying declaratory-judgment action sufficient to warrant permissive intervention pursuant to Civ.R. 24(B).

{¶ 41} We construe Civ.R. 24 liberally to permit intervention. *State ex rel. SuperAmerica Group v. Licking Cty. Bd. of Elections* (1997), 80 Ohio St.3d 182, 184, 685 N.E.2d 507; see also *Rumpke Sanitary Landfill, Inc. v. State*, 128 Ohio St.3d 41, 2010-Ohio-6037, 941 N.E.2d 1161, ¶ 22, citing *Ohio Dept. of*

*Adm. Servs., Office of Collective Bargaining v. State Emp. Relations Bd.* (1990), 54 Ohio St.3d 48, 51, 562 N.E.2d 125.  Whether intervention is granted as of right or by permission, the standard of review is whether the trial court abused its discretion in allowing intervention.  See *State ex rel. First New Shiloh Baptist Church v. Meagher* (1998), 82 Ohio St.3d 501, 503, 696 N.E.2d 1058, fn.1; *Rumpke, Inc.*, at ¶ 22.  We acknowledge that *State ex rel. First New Shiloh Baptist Church* and *Rumpke* commented only on the standard of review for intervention as of right, but because there is no reason to apply a different standard of review to permissive intervention, we conclude that the same standard applies.  Cf. *Ohio Consumers' Counsel v. Pub. Util. Comm.*, 111 Ohio St.3d 384, 2006-Ohio-5853, 856 N.E.2d 940, ¶ 17 (abuse-of-discretion standard is applied when reviewing permissive-intervention decisions made by the Public Utilities Commission of Ohio).

{¶ 42} Regarding intervention as of right, Civ.R. 24(A)(2) provides that any applicant shall be allowed to intervene in a cause of action "when the applicant claims an interest relating to the property or transaction that is the subject of the action and the applicant is so situated that the disposition of the action may * * * impede the applicant's ability to protect that interest."  Further, the applicant's interest must be one that is " 'legally protectable,' "  *State ex rel. Dispatch Printing Co. v. Columbus* (2000), 90 Ohio St.3d 39, 40, 734 N.E.2d 797, quoting *In re Schmidt* (1986), 25 Ohio St.3d 331, 336, 25 OBR 386, 496 N.E.2d 952, and must not be adequately protected by the existing parties.  Civ.R. 24(A)(2); *State ex rel. LTV Steel Co. v. Gwin* (1992), 64 Ohio St.3d 245, 247, 594 N.E.2d 616.

{¶ 43} Regarding permissive intervention, Civ.R. 24(B)(2) provides that a trial court has discretion to permit an applicant to intervene "when [the] applicant's claim or defense and the main action have a question of law or fact in common."  However, in exercising its discretion, the court "shall consider

whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." Id.

{¶ 44} The defense and counterclaim asserted by the National Wildlife Federation and the Ohio Environmental Council in this case relate both legally and factually to the claims asserted by the Merrill and Taft plaintiffs; thus, they have satisfied the "common question of law or fact" requirement of Civ.R. 24(B)(2). Nor did allowing intervention unduly delay or prejudice the adjudication of the rights of the original parties. The court of appeals, therefore, did not abuse its discretion in determining that these organizations met the requirements for permissive intervention. Based on this conclusion, we need not analyze intervention as of right.

{¶ 45} Accordingly, when an organization demonstrates that it has a claim or defense that shares a common question of law or fact with the main action and that intervention will not unduly delay or prejudice the adjudication of the rights of the original parties, it meets the requirements of Civ.R. 24(B)(2) for permissive intervention. Hence, the trial court did not abuse its discretion in permitting the National Wildlife Federation and the Ohio Environmental Council to intervene in this action.

**The Public Trust**

{¶ 46} The substantive issue for our resolution concerns the territory of the public trust, and the parties here disagree as to its boundary. The state, the National Wildlife Federation, and the Ohio Environmental Council all urge us to hold that the court of appeals erred in setting the landward boundary of the public trust at the water's edge, arguing instead that the boundary is the ordinary high-water mark, which they claim that case law has construed to mean the natural shoreline, as well as "the line where the water usually stands when free from disturbing causes."

{¶ 47} The Taft plaintiffs contend that the court of appeals erred by not defining the landward boundary of the public trust as the low-water mark, as modified by accretion, reliction, or erosion.

{¶ 48} The Merrill plaintiffs, as appellees in the Supreme Court, assert that the boundary is the natural shoreline, which it claims is the line at which the water meets the shore wherever that may be at any given time, and they urge this court to affirm the judgment of the court of appeals.

{¶ 49} More than 130 years ago, in *Sloan v. Biemiller* (1878), 34 Ohio St. 492, we determined that when a real estate conveyance calls for Lake Erie as the boundary, the littoral owner's property interest "extends to the line at which the water usually stands when free from disturbing causes." Id. at paragraph four of the syllabus. In our analysis, we adopted the position taken by the Supreme Court of Illinois in *Seaman v. Smith* (1860), 24 Ill. 521, syllabus ("The line at which the water usually stands when free from disturbing causes, is the boundary of land in a conveyance calling for Lake Michigan as a line").

{¶ 50} Contrary to the position advanced by the state, although *Sloan* quoted language from *Seaman* that referred to "the usual high-water mark," which is synonymous with the ordinary high-water mark, neither *Sloan* nor *Seaman* adopted that as the boundary or defined "the line at which the water usually stands when free from disturbing causes" to mean "the usual high-water mark." As a subsequent case from the Supreme Court of Illinois explained, "[i]t is clear from the reasoning and conclusion in [*Seaman*], in the light of the judgment entered, that it was not the high-water mark that was taken as the true limit of the boundary line, but the line where the water usually stood when unaffected by storms or other disturbing causes." *Brundage v. Knox* (1917), 279 Ill. 450, 471, 117 N.E. 123. In addition to a storm, a drought may constitute a disturbing cause. See *Appeal of York Haven Water & Power Co.* (1905), 212 Pa. 622, 631, 62 A. 97.

**{¶ 51}** Subsequent to our decision in *Sloan*, in *State v. Cleveland & Pittsburgh RR. Co.* (1916), 94 Ohio St. 61, 79, 113 N.E. 677, we held that "the state holds the title to the subaqueous land [of Lake Erie within the boundaries of Ohio] as trustee for the protection of public rights." In so holding, we followed our decision in *Sloan*, among other cases, and concluded that "[t]he littoral owner is entitled to access to navigable water on the front of which his land lies, and, subject to regulation and control by the federal and state governments, has, for purposes of navigation, the right to wharf out to navigable water." Id. at paragraph five of the syllabus. In that case, we also urged the General Assembly to pass legislation that would "appropriately provide for the performance by the state of its duty as trustee for the purposes stated; that [would] determine and define what constitutes an interference with public rights, and that [would] likewise, in a spirit of justice and equity, provide for the protection and exercise of the rights of the shore owners." Id. at 84. The General Assembly did so the following year when it enacted the Fleming Act.

**{¶ 52}** The Fleming Act clarified the public policy of the state of Ohio with respect to the waters of Lake Erie, and its pronouncement conformed to decisions of this court dating from 1878 (*Sloan*). See G.C. 3699-a, Am.H.B. No. 255, 107 Ohio Laws 587, recodified as R.C. 123.03, and now renumbered as R.C. 1506.10. The current version of the statute is substantially similar to the original statute, and notably, both refer to the "natural shore line."

**{¶ 53}** At present, R.C. 1506.10 provides: "It is hereby declared that the waters of Lake Erie consisting of the territory within the boundaries of the state, extending from the southerly shore of Lake Erie to the international boundary line between the United States and Canada, together with the soil beneath and their contents, do now belong and have always, since the organization of the state of Ohio, belonged to the state as proprietor in trust for the people of the state, for the public uses to which they may be adapted, subject to the powers of the United

States government, to the public rights of navigation, water commerce, and fishery, and to the property rights of littoral owners, including the right to make reasonable use of the waters in front of or flowing past their lands. Any artificial encroachments by public or private littoral owners, which interfere with the free flow of commerce in navigable channels, whether in the form of wharves, piers, fills, or otherwise, beyond the natural shoreline of those waters, not expressly authorized by the general assembly, acting within its powers, or pursuant to section 1506.11 of the Revised Code, shall not be considered as having prejudiced the rights of the public in such domain. This section does not limit the right of the state to control, improve, or place aids to navigation in the other navigable waters of the state or the territory formerly covered thereby."

**{¶ 54}** Subsequently, in *State ex rel. Squire v. Cleveland* (1948), 150 Ohio St. 303, 337, 38 O.O. 161, 82 N.E.2d 709, we held that the Fleming Act did "not change the concept of the declaration of the state's title as [declared in *Cleveland & Pittsburgh RR. Co.,* 94 Ohio St. 61, 113 N.E. 677]." Instead, the act merely reiterated this court's pronouncement in that case. Thus, we reaffirmed that "littoral owners of the upland have no title beyond the natural shore line; they have only the right of access and wharfing out to navigable waters." *Squire* at 337. From that holding, it follows that the converse is also true: if a littoral owner has no property rights lakeward of the natural shoreline, then the territory of the public trust does not extend landward beyond the natural shoreline. Hence, our review centers on the term "natural shoreline."

**{¶ 55}** Not long after our opinion in *Squire*, the General Assembly, in 1955, enacted R.C. 123.031 in Am.Sub.S.B. No. 187, 126 Ohio Laws 137, 138, which has since been amended and renumbered as R.C. 1506.11. R.C. 123.031 defined the "territory" of the public trust with reference to the "natural shore line." The current version of the statute also includes that reference point, defining the term "territory" to mean "the waters and the lands presently

18

underlying the waters of Lake Erie and the lands formerly underlying the waters of Lake Erie and now artificially filled, between the natural shoreline and the international boundary line with Canada." R.C. 1506.11.

{¶ 56} As noted previously, the General Assembly enacted the Fleming Act a year after this court urged it to pass legislation defining what constitutes an interference with public rights, and, therefore, we presume it did so mindful of the common law. We likewise presume that the General Assembly acted with full knowledge of the common law when it subsequently amended and added sections to the Fleming Act. Accordingly, we conclude that when the General Assembly defined the boundary of the "territory" of the public trust as the "natural shoreline," it ascribed a meaning to that term consistent with the meaning set forth in this court's decisions, including *Sloan*.

{¶ 57} The boundary of the public trust does not, however, as the court of appeals concluded in affirming the trial court, change from moment to moment as the water rises and falls; rather, it is at the location where the water usually stands when free from disturbing causes. That is what we stated in *Sloan,* that is what has been understood for more than a century in Ohio, that is what the General Assembly meant by "natural shore line" when it enacted G.C. 3699-a in 1917, and that is what the law was when ODNR began to enforce the leasing policy, which it has since abandoned, having recognized the presumptive validity of the owners' deeds. We see no reason to modify that law now.

{¶ 58} Finally, the decision of the court of appeals erroneously intimated that a littoral-property owner might extend lakefront property with the addition of artificial fill. *Merrill*, 2009-Ohio-4256, ¶ 127. According to representations in their briefs, the parties generally agree that artificial fill cannot extend a littoral owner's property, except where a littoral owner reclaims land stripped away because of sudden changes caused by avulsion. Additionally, the parties acknowledge that while accretion may increase the property of a littoral owner,

erosion may decrease it. Cf. *State ex rel. Duffy v. Lakefront E. Fifty-Fifth St. Corp.* (1940), 137 Ohio St. 8, 11, 17 O.O. 301, 27 N.E.2d 485; *United States v. 461.42 Acres of Land in Lucas Cty., Ohio* (N.D.Ohio 1963), 222 F.Supp. 55, 56. Thus, we need not further comment on or clarify the effect of these processes on the property line because the parties generally have no dispute regarding them.

{¶ 59} Accordingly, the territory of Lake Erie held in trust by the state of Ohio for the people of the state extends to the natural shoreline, which is the line at which the water usually stands when free from disturbing causes.

{¶ 60} This court has a history of protecting property rights, and our decision today continues that long-standing precedent. In *Cleveland & Pittsburgh RR. Co.*, 94 Ohio St. 61, 113 N.E. 677, syllabus, this court acknowledged that a littoral owner has a right to access and wharf out to navigable waters, and in *Squire*, we held that if the state or a municipality improperly destroys or impairs that property right, a littoral owner is entitled to compensation. 150 Ohio St. 303, 38 O.O. 161, 82 N.E.2d 709, paragraph six of the syllabus. We recently reiterated our adherence to the principles that protect property rights in *Norwood v. Horney*, 110 Ohio St.3d 353, 2006-Ohio-3799, 853 N.E.2d 1115, ¶ 37, where we explained that "the founders of our state expressly incorporated individual property rights into the Ohio Constitution in terms that reinforced the sacrosanct nature of the individual's 'inalienable' property rights, Section 1, Article I [Ohio Constitution], which are to be held forever 'inviolate.' Section 19, Article I." (Footnote deleted.) Id. We further observed that Ohio has always considered property rights to be fundamental and concluded that "the bundle of venerable rights associated with property is strongly protected in the Ohio Constitution and must be trod upon lightly, no matter how great the weight of other forces." Id. at ¶ 38.

{¶ 61} During the pendency of this litigation, ODNR announced that it "should honor the apparently valid real property deeds of the plaintiff-relator

lakefront owners unless a court determine[d] that the deeds are limited by or subject to the public's interests in those lands or are otherwise defective or unenforceable." It further represented that it "will adopt or enforce administrative rules and regulatory policies with the assumption that the lakefront owners' deeds [are] presumptively valid, and also, will no longer require property owners to lease land contained within their presumptively valid deeds."

{¶ 62} Our decision today reaffirms this court's previous determination that the territory of the public trust in Lake Erie extends to the natural shoreline, which is the line at which the water usually stands when free from disturbing causes, which we first announced in 1878 and clarified in 1916, and which the General Assembly codified in 1917. Nothing contained in our opinion interferes with the presumptively valid deeds of the lakefront owners. Similarly, we reaffirm our statement in *Squire* that "[t]he littoral owners of the upland have no title beyond the natural shoreline; they have only the right of access and wharfing out to navigable waters." Id. at 337.

## Conclusion

{¶ 63} The state of Ohio has standing to appeal from a judgment when it is an independent party to an action and has been aggrieved by the final order from which it seeks to appeal. In addition, the National Wildlife Federation and the Ohio Environmental Council are proper intervening parties to this lawsuit pursuant to Civ.R. 24. Further, we conclude that the territory of Lake Erie, held in trust by the state of Ohio for the people of the state, extends to the natural shoreline, which is the line at which the water usually stands when free from disturbing causes.

{¶ 64} Consequently, we reverse the holding of the court of appeals that the state of Ohio lacked appellate standing, but we affirm its holding that upheld the decision to permit the National Wildlife Federation and the Ohio Environmental Council to intervene pursuant to Civ.R. 24(B)(2).

{¶ 65} Having clarified that the territory of Lake Erie is held in trust for the people of Ohio and extends to the natural shoreline, the line at which the water usually stands when free from disturbing causes, we affirm the appellate court to the extent that its judgment is consistent with this pronouncement, but we reverse its decision implying that artificial fill can alter the boundary of the public trust and its decision to affirm the trial court's decision that the boundary of the public trust changes from moment to moment. This matter is remanded to the trial court for further proceedings on pending claims consistent with this opinion.

Judgment accordingly.

PFEIFER, LUNDBERG STRATTON, CUPP, and MCGEE BROWN, JJ., concur.

O'CONNOR, C.J., and LANZINGER, J., concur in syllabus and judgment only.

_____

Homer S. Taft, pro se.

Calfee, Halter & Griswold, L.L.P., James F. Lang, and Fritz E. Berckmueller, for appellee class-action plaintiffs.

L. Scot Duncan, pro se, and for appellee Darla J. Duncan.

Michael DeWine, Attorney General, Alexandra T. Schimmer, Chief Deputy Solicitor General, Stephen P. Carney, Deputy Solicitor, and Cynthia K. Frazzini, Assistant Attorney General, for appellant and cross-appellee state of Ohio.

Porter, Wright, Morris & Arthur, L.L.P., and Kathleen M. Trafford, Special Counsel for appellants and cross-appellees Ohio Department of Natural Resources and Director David Mustine.

Neil S. Kagan and Peter A. Precario, for appellants and cross-appellees National Wildlife Federation and Ohio Environmental Council.

Chester, Willcox & Saxbe, L.L.P., Charles R. Saxbe, and Gerhardt A. Gosnell II, in support of the state's first proposition of law on behalf of amici

22

curiae former Ohio Attorneys General Betty Montgomery, Jim Petro, and Nancy Rogers.

Michael A. Cox, Attorney General of Michigan, B. Eric Restuccia, Solicitor General, S. Peter Manning, Division Chief, and Robert P. Reichel and Darryl J. Paquette, Assistant Attorneys General; and Thomas W. Corbett Jr., Attorney General of Pennsylvania, in support of the state of Ohio on behalf of amici curiae the states of Michigan and Pennsylvania.

The Law Office of Colin Bennett, L.L.C., and Colin William Bennett, in support of appellants and cross-appellees on behalf of amici curiae Joseph Sommer, Frances Buchholzer, Robert Teater, Ohio Bass Federation, Izaak Walton League of America, Ohio Chapter, and Northeast Ohio Watershed Council.

R. S. Radford and Luke A. Wake; and Michael R. Gareau & Associates Co., L.P.A., and David M. Gareau, in support of appellees on behalf of amicus curiae, Pacific Legal Foundation.

John P. O'Donnell, L.L.C., and John P. O'Donnell; and Baker & Hostetler, L.L.P., and John H. Burtch, urging affirmance on behalf of amici curiae Willow Beach Club, Brookwood-Cresthaven Beach Club, Inc., the Linwood Park Company, and the Ohio Association of Realtors.

Ogletree, Deakins, Nash, Smoak & Stewart, P.C., Bruce G. Hearey, and LerVal M. Elva, in support of appellees on behalf of amicus curiae National Federation of Independent Business Small Business Legal Center.

Michael E. Gilb, urging affirmance on behalf of amicus curiae Geauga Constitutional Council.

Smith, Martin, Powers & Knier, P.C., and David L. Powers, in support of class-action plaintiffs on behalf of amicus curiae Save Our Shoreline.

Chad A. Endsley, in support of class-action plaintiffs on behalf of amicus curiae Ohio Farm Bureau Federation.

Faulkner, Muskovitz & Phillips and Robert M. Phillips; and Patrick A. D'Angelo, urging affirmance on behalf of amici curiae Ohio Fraternal Order of Police Lodge 8 and Cleveland Police Patrolmen's Association.

Montgomery Consulting Group, L.L.C., Betty Montgomery, opposing the state's second proposition of law on behalf of amicus curiae Betty Montgomery.

Shannon Lee Goessling, in support of class-action plaintiffs on behalf of amicus curiae Southeastern Legal Foundation, Inc.

Maurice A. Thompson, urging affirmance on behalf of amicus curiae 1851 Center for Constitutional Law.

_____