[Cite as *In re Estate of Murphy v. Murphy*, 2023-Ohio-3904.]

COURT OF APPEALS
COSHOCTON COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| IN RE: ESTATE OF SHAWN MURPHY | : | JUDGES: |
| | : | Hon. Patricia A. Delaney, P.J. |
| KOLT DAUGHERTY | : | Hon. Craig R. Baldwin, J. |
| | : | Hon. Andrew J. King, J. |
| Appellant | : | |
| | : | |
| -vs- | : | |
| | : | |
| SHANNON D. MURPHY, | : | Case No. 23AP0006 |
| ADMINISTRATOR | : | |
| | : | |
| Appellee | : | O P I N I O N |


CHARACTER OF PROCEEDING:     Appeal from the Court of Common
                            Pleas, Probate Division, Case No.
                            20221129


JUDGMENT:                   Affirmed


DATE OF JUDGMENT:           October 26, 2023


APPEARANCES:

For Appellant                        For Appellee

BRIAN W. BENBOW                      STEPHEN A. ECKINGER
265 Sunrise Center Drive             1611 North Main Street
Zanesville, OH  43701                Suite A

North Canton, OH  44720

*King, J.*

{¶ 1}   Appellant, Kolt Daugherty, appeals the February 9, 2023 judgment entry of the Court of Common Pleas of Coshocton County, Ohio, Probate Division, denying his motion to intervene.  Appellee is Shannon D. Murphy, Administrator ("Administrator").  We affirm the trial court.

### FACTS AND PROCEDURAL HISTORY

{¶ 2}   On July 22, 2022, Administrator filed an application to administer the Estate of Shawn Murphy ("decedent").  Administrator is decedent's brother, decedent's sole listed next of kin.  Decedent did not leave a will.

{¶ 3}   On October 26, 2022, Daugherty filed a motion to intervene under Civ.R. 24(A)(2), claiming to be the natural son of decedent.  A hearing was held on January 5, 2023.  By judgment entry filed February 9, 2023, the trial court denied the motion.

{¶ 4}   Daugherty filed an appeal with the following assignment of error:

I

{¶ 5}   "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY DENYING APPELLANT'S MOTION TO INTERVENE WHEN APPELLANT HAD A RIGHT TO INTERVENE."

{¶ 6}   "THE TRIAL COURT COMMITTED AN ERROR OF LAW BY NOT HOLDING AN EVIDENTIARY HEARING AS REQUIRED UNDER R.C. §2123.01 AND R.C. §2123.02."

{¶ 7}   "THE TRIAL COURT, BY DENYING A HEARING, DENIED PROPOSED INTERVENOR/SON/APPELLANT DUE PROCESS OF LAW UNDER SECTION 16,

ARTICLE I, OHIO CONSTITUTION AND THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION."

I

{¶ 8}   Daugherty listed all three issues under one assignment of error as he states they are interrelated.  He claims the trial court erred in denying his motion to intervene. We disagree.

{¶ 9}   Civ.R. 24 governs intervention.  Daugherty moved for intervention under subsection (A)(2) which states the following:

> **(A) Intervention of Right.** Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of this state confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction that is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

{¶ 10} In seeking intervention, Daugherty claimed the distribution of the entirety of the estate's proceeds would either go to him or Administrator, decedent's brother. Because Administrator serves as executor and personally stands to benefit from denying that Daugherty is a lawful heir, their interests are contrary.  So, the issue on appeal is whether the "interest" claimed by Daugherty is sufficient under the rule.

{¶ 11} We begin our analysis by noting motions under Civ. R. 24(A) are reviewed under an abuse of discretion standard. *Waynesburg Holdings, LLC v. Wells Fargo Bank, N.A.,* 2019-Ohio-4764, 149 N.E.3d 199, ¶ 42 (5th Dist.). "Abuse of discretion" means an attitude that is unreasonable, arbitrary or unconscionable. *Huffman v. Hair Surgeon, Inc.,* 19 Ohio St.3d 83, 87, 482 N.E.2d 1248 (1985). Most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary. *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.,* 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). An unreasonable decision is one backed by no sound reasoning process which would support that decision. *Id.* "It is not enough that the reviewing court, were it deciding the issue de novo, would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result." *Id.*

{¶ 12} The movant of a Civ.R. 24 motion bears the burden of proof and production. *Miller v. Miller,* 2019-Ohio-1886, 135 N.E.3d 1271, ¶ 19 (8th Dist.), citing *Grove Court Condominium Unit Owners' Association v. Hartman*, 8th Dist. Cuyahoga No. 94910, 2011-Ohio-218, ¶ 14. To be successful, a movant must show the "interest" is a legally protectable interest. *State ex rel. Merrill v. Ohio Department of Natural Resources*, 130 Ohio St.3d 30, 2011-Ohio-4612, 955 N.E.2d 935, ¶ 42. Although there is not an explicit test for determining whether a movant has a protected legal interest, the Supreme Court has held a movant's claim must be colorable. *In re Schmidt*, 25 Ohio St.3d 331, 336, 496 N.E.2d 952 (1986). We note when evaluating a motion under Civ.R. 24, a trial court should liberally grant intervention. *Merrill, supra*; *Rumpke Sanitary Landfill, Inc. v. State*, 128 Ohio St.3d 41, 2010-Ohio-6037, 941 N.E.2d 1161.

{¶ 13} In its February 9, 2023 judgment entry denying the motion to intervene, the trial court did not express any reasons for its denial: "The Court finds the Motion to Intervene not well taken, and it is denied."

{¶ 14} As the former stepson of decedent, Daugherty would have no colorable claim to the estate proceeds. But as the legal son of decedent, he would indeed have a legally protected claim. In order to possess a colorable claim to estate proceeds and therefore a right to intervene, Daugherty claims "paternity was established prior to the death of the decedent."

{¶ 15} Administrator responds by noting a parentage action under R.C. Chapter 3111 was never filed and is now barred by the statute of limitations (R.C. 3111.05). We agree. A claim brought after the tolling of the statute of limitations is not a colorable claim. Accordingly, the trial court did not abuse its discretion in this regard.

{¶ 16} Daugherty responds by arguing a statutory parentage action is not the only vehicle by which he can establish a colorable claim. He argues under the authority of *Powell v. Williams,* 2022-Ohio-526, 185 N.E.3d 595, ¶ 20, *appeal not accepted,* 167 Ohio St.3d 1408, 2022-Ohio-2047, 188 N.E.3d 1100, he can inherit because decedent married his mother and acknowledged him. There is no dispute that Daugherty's mother married decedent. But as the movant, Daugherty has the burden to establish a colorable claim in both law and fact that he was acknowledged by decedent.

{¶ 17} In an apparent effort to assist the trial court in determining whether Daugherty met that burden, a hearing was conducted at which his counsel could present evidence. During the January 5, 2023 hearing, the trial court heard from two witnesses, Loretta Murphy, Daugherty's mother, and Daugherty himself.

{¶ 18} Ms. Murphy testified when she gave birth to Daugherty in March 1985, she was married to Joe Daugherty. T. at 10. They divorced in 1987. T. at 13. In the dissolution/divorce document, Daugherty was listed as a child of the marriage; a child support order was issued at the time. T. at 19, 21. Joe did not pay child support for years until after "Wayne County support went after him." T. at 14, 21. She stated Joe never acknowledged Daugherty as his son. T. at 14. She testified she "cheated" on Joe with decedent. T. at 13. She married decedent in 1994, but they divorced in 1997. T. at 25. According to Ms. Murphy, decedent unofficially claimed Daugherty as his son; he attended Daugherty's life events and provided him with financial assistance. T. at 15-16. Genetic testing between Daugherty and decedent was never done because "[w]e never thought we had to." T. at 18. Ms. Murphy, Daugherty, or decedent never filed an action in juvenile court to determine the existence of a father and child relationship. T. at 22. A new birth certificate was never issued listing decedent as Daugherty's father, nor did decedent legally adopt Daugherty. *Id.* Ms. Murphy agreed there were no legal proceedings wherein decedent acknowledged paternity of Daugherty. T. at 22-23. She did not think legal proceedings were ever necessary because she and decedent "have 39 years together * * * good and bad. And he was just always Kolt's dad." T. at 24. When asked if she had any doubt as to who Daugherty's father was, Ms. Murphy answered in the negative. T. at 19. However, at no time during her testimony did Ms. Murphy directly say decedent was Daugherty's father.

{¶ 19} Daugherty testified decedent was his father. T. at 26. When asked why he believed that, Daugherty replied: "That's a hard question to answer. I don't understand why he wouldn't be. To me, he has always been my father." *Id.* Decedent was there "for

everything" in Daugherty's life, offering emotional and financial support.  T. at 28. Daugherty stated he shared physical characteristics with decedent. T. at 27.  Daugherty agreed there were no legal proceedings that established decedent as his father.  T. at 40-41.

{¶ 20} Prior to receiving the evidence, Daugherty's claim could have been thought of as contingent until paternity via acknowledgment was sufficiently established.  The Sixth Circuit faced a similar situation in *Purnell v. City of Akron,* 925 F.2d 941, 947 (6th Cir.1991).  In *Purnell,* individuals claiming to be the children of the decedent sought to intervene in a wrongful death action arising under federal law.  Whether they could intervene turned on whether they could sufficiently establish paternity.  The trial court denied the motion, but the Sixth Circuit reversed.  In reversing, the Sixth Circuit held it may turn out later that they are not the decedent's children and thus would be without standing, but they could intervene in the matter until that time.  *Id.* at 948.[1]

{¶ 21} Here, the trial court decided to give Daugherty the opportunity to present evidence related to paternity before ruling on the motion.  We cannot say that was an error.  At best, Daughtery established that he felt like he was the decedent's son.  There was insufficient evidence to establish a colorable claim that he was acknowledged as the decedent's son.  Daugherty argues he should have been allowed to intervene and then receive another evidentiary hearing.  As illustrated by *Purnell*, that appears to have been a valid option for the trial court to consider.  But if Daugherty cannot make a factual

---

[1]We note under the federal rules, the appellate court reviews a motion to intervene de novo and standing is not required to grant intervention.

showing that he has a colorable claim after an evidentiary hearing, it follows that he would fare worse after a second hearing on a higher burden.

{¶ 22} The trial court had ample evidence before it to sustain its decision not to grant intervention; we cannot find the trial court abused its discretion.

{¶ 23} The assignment of error is denied.

{¶ 24} The judgment of the Court of Common Pleas of Coshocton County, Ohio, Probate Division, is hereby affirmed.

By King, J.

Delaney, P.J. and

Baldwin, J. concur.