[Cite as *Green v. Helms*, 2013-Ohio-2075.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| --- | --- | --- |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| CITY OF GREEN | C.A. No. 26371 |
| --- | --- |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| JOEL HELMS, et al. | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellants | CASE No. CV 2011-08-4414 |

DECISION AND JOURNAL ENTRY

Dated: May 22, 2013

MOORE, Presiding Judge.

**{¶1}** Defendant Joel Helms appeals the decision of the Summit County Court of Common Pleas. We affirm.

I.

**{¶2}** At all times relevant to this appeal, Mr. Helms and his wife, Mary Helms, resided in a single family residential structure located on property ("the property") that was zoned industrial in the City of Green. In a previous action commenced in 2006, the City and the Helmses were involved in a dispute regarding items accumulating on the property outside of the residential structure. The parties settled the dispute in 2007 by entering into a settlement agreement that included an arbitration provision.

**{¶3}** Thereafter, another dispute arose between the parties regarding purported litter and debris on the property. The parties submitted their dispute to arbitration, and the arbitrator determined that certain items on the property constituted health, welfare, or safety hazards and

ordered the Helmses to remove these items. The City then filed an action in the trial court in a case numbered CV 2009-07-5683 ("2009 case"), seeking to enforce the arbitration decision. The trial court issued a judgment entry confirming the arbitrator's decision and requiring the Helmses to remove certain items from the property. Thereafter, the City filed a motion for contempt, arguing that the Helmses had failed to clean the property as required. During a hearing held on the City's motion for contempt, Mr. Helms explained that he used several items located in the yard of the property in his sewer treatment business.

{¶4} Based upon Mr. Helms' testimony in the 2009 case, on August 10, 2011, the City filed a complaint commencing the instant action. Therein, the City sought declaratory judgment that the Helmses were violating the City's zoning ordinances pertaining to home occupations, and requested the court to order them to cease the illegal operation of the home occupation outside of the property's principal structure. The Helmses answered the complaint, denying the applicability of the legal bases relied upon by the City in its complaint. Thereafter, the City moved for summary judgment, attaching transcripts of Mr. Helms' testimony from the 2009 case in support. On February 28, 2012, the trial court issued an order granting the City's motion for summary judgment, and declaring that the Helmses were conducting a home occupation outside of the principal residential structure in violation of the City of Green Codified Ordinances ("Loc.Ord."). The trial court ordered the Helmses to cease the operation of the home occupation outside of the residential structure and to remove the offending materials.

{¶5} On March 30, 2012, Mr. Helms filed a notice of appeal from the trial court's order. We initially dismissed the appeal as untimely. However, Mr. Helms then moved this Court to reconsider our decision dismissing the appeal. We granted his motion for reconsideration and reinstated the appeal. Although the appellant's brief and the appellant's

reply brief appear to be signed by both Joel and Mary Helms, the notice of appeal in this matter was signed and submitted only by Mr. Helms. Moreover, Mrs. Helms is nowhere referenced in the body of the appeal, which instead provides, "Now comes Joel Helms giving notice of appeal * * *." As such, Mr. Helms is the sole appellant in this matter, and, thus, the foregoing decision is limited to Mr. Helms. *See* App.R. 3(D) ("notice of appeal shall specify the party or parties taking the appeal"). Mr. Helms has raised one assignment of error for our review.

II.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT.

{¶6} In his sole assignment of error, Mr. Helms maintains that the trial court erred in determining that his outdoor storage of business-related materials upon the property was prohibited by the City's zoning regulations and in granting summary judgment to the City. We disagree.

{¶7} This Court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). Pursuant to Civ.R. 56(C), summary judgment is proper if:

> (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977).

{¶8} Here, Mr. Helms has not disputed the material facts upon which the City moved for summary judgment. Instead, he contends that, based upon these facts, the City was not entitled to judgment as a matter of law because: (1) the law director was required to obtain

legislative approval in order to bring suit against him, (2) the industrial zoning classification of the property permits Mr. Helms to use the property to conduct his business, (3) the zoning regulations relied upon by the trial court do not apply to the Helmses' industrially-zoned property, and (4) the City failed to first seek arbitration of this dispute in violation of the parties' 2007 settlement agreement. We will address these arguments in turn, combining the second and third arguments to facilitate our review.

Authority of the Law Director

{¶9} Mr. Helms first argues that the City's law director was not authorized to bring the action against him without legislative approval. In support, Mr. Helms cites R.C. 733.53, which provides:

> The city director of law, when required to do so by resolution of the legislative authority of the city, shall prosecute or defend on behalf of the city, all complaints, suits, and controversies in which the city is a party, and such other suits, matters, and controversies as he is, by resolution or ordinance, directed to prosecute. He shall not be required to prosecute any action before the mayor of the city for the violation of an ordinance without first advising such action.

Based upon this provision, Mr. Helms argues that the law director was not "authorized" to bring the instant action. However, this statute sets forth the actions that a law director must take "when required to do so[.]" Section 6.4(B) of the City of Green Charter, authorizes the law director to take action on behalf of the City, and provides, in part:

> The Director of Law shall be the legal advisor on all legal matters coming before the City and shall represent or direct the representation of the City in all litigation, cases or suits coming before the City. He shall prepare and review all contracts, ordinance, resolutions and other documents or instruments as required by the Mayor and Council. He will have other powers and duties performed by Directors of Law of general statutory planned cities under the general laws of the State of Ohio.
>
> In addition, the Director of Law shall perform other duties specified for City solicitors by the laws of the State of Ohio.

{¶10} Moreover, pursuant to Loc.Ord. 1230.03(1):

In case any building is or is proposed to be located, erected, constructed, reconstructed, enlarged, changed, maintained, or used or any land is or is proposed to be used in violation of this Code, or any amendment or supplement thereto, City Council, the City's Law Director, the Zoning Division, or any adjacent or neighboring property owner who would be especially damaged by such violation, in addition to other remedies provided by law, may institute injunction, mandamus, abatement, or any other appropriate action or proceeding to prevent, enjoin, abate, or remove such unlawful location, erection, construction, reconstruction, enlargement, change, maintenance, or use.

{¶11} In the City's complaint, it alleged that the Helmses were conducting an improper home occupation on the property in violation of the City's zoning ordinances. Therefore, the City's charter and the local ordinance authorized the law director to institute an appropriate action. Accordingly, Mr. Helms' argument that the law director lacked authority to institute the present action lacks merit.

Home Occupations in Industrially-Zoned Districts

{¶12} Mr. Helms next argues that the industrial zoning designation of the property allows for Mr. Helms to conduct his business on the property, to use the yard for storage as a use accessory to that of his sewer treatment business, and to continue to reside in the home as a permitted non-conforming use of the property. However, even were we to accept Mr. Helms' arguments in each of these regards, we must conclude that the use of the property amounts to a "home occupation" subject to the requirements set forth in Loc.Ord. 1226.03(5)(D).

{¶13} Loc.Ord. 1231.02 defines a "[h]ome [o]ccupation" as "[a]n occupation or profession for financial gain or profit which is incidental to and carried on entirely within a dwelling unit located on a lot, exclusive of attached garage or patio areas, by resident occupants of the dwelling unit and which occupation is clearly incidental to and accessory to the residential use of the property and is without adverse effect to the property and shall not exceed thirty-five percent of gross area of structure." Loc.Ord. 1231.02 defines a "[d]welling [u]nit" as "[a] single

unit of one or more rooms providing complete, independent living facilities for one or more persons including permanent provisions for living, sleeping, eating, cooking, and sanitation but not including a tent, cabin, hotel, motel, recreational vehicle, or other temporary or transient structure or facility."

**{¶14}** Pursuant to Loc.Ord. 1226.03(3)(A)(7), certain uses of property, including use as a home occupation, may be subject to use-specific regulations. "The existence of these use-specific standards is noted through a cross-reference in the last column of Table 1226-2. These standards apply in all districts unless otherwise specified." *Id.* Table 1226-2 permits "home occupations" in all district designations, including industrially zoned districts. The table then cites to Loc.Ord. 1226.03(5)(D) as an additional regulation applying to home regulations.

**{¶15}** Loc.Ord. 1226.03(5)(D) sets forth:

(D) <u>Home occupations – accessory to a dwelling in residential districts.</u>

1.) A home occupation may be conducted in a dwelling unit provided that the following standards are maintained.

* * *

3.) The occupation shall be conducted wholly within a principal building, and any space used for sales, service or production shall occupy no more than thirty-five percent of the total floor area of the dwelling.

* * *

6.) There shall be no change in the outside appearance of the dwelling or other visible evidence of the conduct of such home occupation.

7.) No home occupation, or any aspect thereof, including the storage of materials and supplies, shall be conducted in any accessory building or in an open yard.

(Underlining sic.).

**{¶16}** In their answer, the Helmses admitted that they resided in a single family detached home on the property. Further, they admitted that Mr. Helms runs a sewage treatment

business from the property. However, Mr. Helms maintains that Loc.Ord. 1226.03(5)(D) does not apply to properties in industrially-zoned districts. In support, he has relied heavily upon the heading of Loc.Ord. 1226.03(5)(D): "Home Occupations – accessory to a dwelling in a residential district." (Underlining sic.). Mr. Helms contends that this heading limits the applicability of Loc.Ord. 1226.03(5)(D) to properties in residential districts. We are mindful that Loc.Ord. 1226.03(3)(A)(7) directs that "additional regulations," including Loc.Ord. 1226.03(5)(D), "apply in all districts unless otherwise specified," and, it may appear that this heading specifies that Loc.Ord. 1226.03(5)(D) applies only to home occupations in residential districts. However, Loc.Ord. 202.01 provides, in relevant part, that "[c]ode, title, chapter and section headings do not constitute any part of the law as contained in these Codified Ordinances." Therefore, we conclude that the heading to Loc.Ord. 1226.03(5)(D) is not effectual at limiting its provisions to only those home occupations occurring in "residential districts." The substantive language of Loc.Ord. 1226.03(5)(D), which does not specify that its provisions apply only in residential districts, when read with the plain language of Loc.Ord. 1226.03(3)(A)(7) (additional use standards apply in all districts unless otherwise specified) provides that the home occupation use-provisions extend to properties located in all zoning districts. Accordingly, we agree with the trial court that Mr. Helms' use of the property is subject to the provisions set forth in Loc.Ord. 1226.03(5)(D), despite the industrial zoning classification of the property.

{¶17} Loc.Ord. 1226.03(5)(D)(3) prohibits a home occupation from being conducted outside of a principal building. Loc.Ord. 1226.03(5)(D)(6) prohibits visible evidence of the occupation from the outside of the residential structure, and Loc.Ord. 1226.03(5)(D)(7) prohibits open-yard storage of materials used in the home occupation. In its motion for summary judgment, the City referenced and attached Mr. Helms' testimony from the 2009 case, wherein

he attested that he utilized several items located in the yard of the property in conducting his sewer treatment business, which he ran from his home. Therefore, we conclude that Loc.Ord. 1226.03(5)(D) applied to the facts of the instant case. As the City demonstrated that no question of material fact existed that Mr. Helms was violating Loc.Ord. 1226.03(5)(D), the trial court did not err in granting the City summary judgment on this basis.

2007 Settlement Agreement

{¶18} Lastly, Mr. Helms maintains that, pursuant to the terms of the parties' 2007 settlement agreement, the City was required to submit this dispute to arbitration. The agreement contained the following provision:

> Helms[ ]specifically agree to keep their property in compliance with the provisions of Green Codified Ordinance Chapter 632 and Ohio Revised Code Section 731.51. If Helms[ ]fail to keep their properties in compliance with Ohio Revised Code and Green Codified Ordinance, [the City] shall issue a five (5) day notice of the violation to Helms. If Helms does not dispute the violation and fails to cure the violation, [the City] may enter upon the property pursuant to Section 731.51 of the Ohio Revised Code and Section 632.15 of Green Codified Ordinances; clean up the property; and assess the cost of the clean up as a lien against the property. If Helms disputes the alleged violation, and promptly notifies [the City], in writing, within five (5) days, the parties shall submit the dispute to binding arbitration before a single arbitrator mutually selected by the parties pursuant to Chapter 2711 of the Ohio Revised Code. The parties further agree that the arbitration shall be held within ninety (90) days of the date of the written notice from Helms[ ]objecting to the alleged violation.

{¶19} The City maintains that the arbitration provision is not applicable to the present case because the instant complaint did not allege violations of Loc.Ord. Chapter 632 or R.C. 731.51. We agree.

{¶20} The complaint here alleged violations of Loc.Ord. 1226.03, pertaining to home occupations. Nowhere within the instant complaint does the City maintain that the Helmses were in violation of Loc.Ord. Chapter 632 (regarding litter) or R.C. 731.51 (regarding noxious weeds and litter). Accordingly, as the allegations of the complaint did not fall within the terms

of the above arbitration provision, Mr. Helms' argument that the City was required to submit this dispute for arbitration lacks merit.

### III.

**{¶21}** Mr. Helms' sole assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

CARLA MOORE
FOR THE COURT

BROGAN, J.
CONCURS.

CARR, J.
DISSENTING.

{¶22} I respectfully dissent. As the property at the center of this dispute is located in an area zoned for industrial use, I would hold that Loc.Ord. 1226.03(5)(D) is inapplicable.

{¶23} The record reflects a long history of litigation between these parties. The cases have spanned state and federal courts over the past two decades. Although the City's efforts over the years to make Helms' property conform with the City's zoning requirements is an understandable and a laudable goal, the property rights of the individual have long been recognized by the Ohio and United States Constitutions as fundamental rights and protected by the courts. *State ex rel. Merrill v. Ohio Dept. of Natural Resources*, 130 Ohio St.3d 30, 2011-Ohio-4612, ¶ 60. "[T]he founders of our state expressly incorporated individual property rights into the Ohio Constitution in terms that reinforced the sacrosanct nature of the individual's 'inalienable' property rights, Section 1, Article I [Ohio Constitution], which are to be held forever 'inviolate.' Section 19, Article I." (Footnote deleted.) *Norwood v. Horney*, 110 Ohio St.3d 353, 2006-Ohio-3799, ¶ 37. This state "has always considered property rights to be fundamental and concluded that 'the bundle of venerable rights associated with property is strongly protected in the Ohio Constitution and must be trod upon lightly, no matter how great the weight of other forces.'" *Merrill* at ¶ 60, quoting *Norwood* at ¶ 38.

{¶24} The City's zoning ordinances create a tension between the rights of the property owners to use their property as they see fit and the City's land use planning. "In interpreting a zoning ordinance, a court must strictly construe restrictions on the use of real property in favor of the property owner." *Akwen, Ltd. v. Ravenna Zoning Bd. of Appeals*, 11th Dist. No. 2001-P-0029, 2002 WL 480041 (March 29, 2002), citing *BP Oil Co. v. Dayton Bd. of Zoning Appeals*, 109 Ohio App.3d 423 (2d Dist.1996). This is because "[z]oning resolutions are in derogation of

the common law and deprive a property owner of certain uses of his land to which he would otherwise be lawfully entitled." *Saunders v. Clark Cty. Zoning Dept.*, 66 Ohio St.2d 259, 261 (1981).

{¶25} Here, in addition to the fact that the heading of the Loc.Ord. 1226.03(5)(D) states that it applies to home occupations that are "accessory to a dwelling in residential districts," I would conclude that the substantive language of the regulations seem to suggest that it is only applicable to residential districts. For example, the home occupation provision requires that "[t]he occupation shall not generate a significantly greater volume of traffic that would normally be expected in a residential area * * *." Loc.Ord. 1226.03(5)(D)(5). The provision further demands that "[t]he occupation shall be conducted only by members of the family residing in the dwelling, and no one from outside the family shall be employed within the dwelling unit[,]" and that "[h]omes [shall not] serve as a gathering point for employees engaged in [] business that takes place off the premises[.]" Loc.Ord. 1226.03(5)(D)(2),(4).

{¶26} While these restrictions seem to be reasonably aimed at maintaining the character and manner of residential districts, the same policy considerations do not exist in districts specifically zoned for industrial activity. This Court must strictly construe the City's zoning regulations on the use of real property in favor of the property owner. Based on this high standard and my reading of the City's zoning regulations, I would sustain Mr. Helms' assignment of error.

(Brogan, J., retired, of the Second District Court of Appeals, sitting by assignment pursuant to §6(C), Article IV, Constitution.)

APPEARANCES:

JOEL A. HELMS, pro se, Appellant.

STEPHEN J. PRUNESKI, Attorney at Law, for Appellee.