[Cite as *In re D.B.*, 2019-Ohio-4439.]

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| In the Matter of: | : | |
| D.B. et al., | : | No. 19AP-267 |
| | | (C.P.C. No. 16JU-12667) |
| (A.S., | : | |
| | | (ACCELERATED CALENDAR) |
| Appellant). | : | |
| In the Matter of: | : | |
| D.B. et al., | : | No. 19AP-326 |
| | | (C.P.C. No. 16JU-12667) |
| (A.B., | : | |
| | | (ACCELERATED CALENDAR) |
| Appellant). | : | |

### D E C I S I O N

### Rendered on October 29, 2019

**On brief:** *Christopher Smith,* for appellant A.S.

**On brief:** *John T. Ryerson,* for appellant A.B.

**On brief:** *Robert J. McClaren,* for appellee Franklin County Children Services.

APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations, Juvenile Branch

NELSON, J.

{¶ 1} Neither mother T.B. nor father A.B. picked up their five children, aged 6, 5, 3, 2, and 1 from daycare on October 23, 2016. The next day, they were transported to Franklin County Children Services. October 26, 2016 Findings of Fact and Conclusions of Law. Attorney Louis Kort was appointed to represent T.B. effective November 1, 2016, but was allowed to withdraw as counsel at the neglect and dependency hearing on January 19,

2017. Nov. 4, 2016 Entry Appointing Attorney; Jan. 23, 2017 Magistrate's Decision. Effective that day, the children were adjudicated to be neglected under R.C. 2151.03(A)(2) and dependent under R.C. 2151.04(C), and temporary custody of them was granted to Franklin County Children Services. Jan. 23, 2017 Judgment Entry adopting Jan. 23, 2017 Magistrate's Decision.

{¶ 2} On October 5, 2017, the county filed a Motion for Permanent Court Commitment, based on T.B. and father A.B's abandonment of the children and failure and unwillingness to comply with the case plan. "The parents have not made significant progress in reaching their case plan goals or alleviating or mitigating the problems that initially resulted in the children's removal," the county submitted. Motion at 8 (adding that "[t]here is no reason to expect that such progress can be made prior to October 27, 2017"). A trial date was set for October 23, 2017. Oct. 6, 2017 Notice of Hearing. Mother T.B. was served by publication. Proof of publication was filed October 16, 2017.

{¶ 3} Continuances were filed on October 23, 2017, and January 25, 2018, May 9, 2018, and August 14, 2018. The August 14 continuance set a new trial date of November 26, 2018.

{¶ 4} On November 5, 2018, paternal grandfather A.S. filed a pro se Motion to Add New Party and a Motion for Legal Custody, along with affidavits of support and Notices of Hearing attached to each motion referencing the November 26, 2018 trial date. In the instructions for service to the clerk, Grandfather asked for certified mail service on mother T.B., but his filings otherwise seem to have lacked any certificate of service.

{¶ 5} On the designated trial date of November 26, 2018, mother T.B. and father A.B. both appeared and signed a Waiver of Service of Summons and Notice of Hearing form acknowledging receipt of summons and the Complaint/Motion for Permanent Custody, and establishing February 25, 2019 as the new date to appear before Judge Gill on "Hearing type Code[s]" circled for "MH" (which we take to be "motion hearing") and "CO" (which we understand to abbreviate "commitment"). Along with their respective lawyers and the guardian ad litem—as well as with grandfather A.S., identified as "non party S."—they also signed a "Motion for Continuance" as based on "Mother's first appearance and request for counsel," which with the judge's signature set the action over until that February 25, 2019 date.

{¶ 6} On December 28, 2018, the trial court appointed Andrew Russ as new counsel for mother T.B.

{¶ 7} On January 4, 2019, the clerk entered a notice of failure of certified mail service on mother T.B. with regard to submissions by grandfather A.S.

{¶ 8} At the February 25, 2019 trial, mother T.B.'s attorney stated:

> I sent a letter out to my client February 19 with my -- on my letterhead with my contact information, saying I was appointed, reminding her today's a hearing on permanent custody motion in your courtroom and that the Court can proceed without her presence. And if I -- if she doesn't come, you know, the Court could remove me as her attorney and she has certain parental rights, which she has to come forward to -- to -- assert those and so, I have not heard from her. She has not been here today, so I'd ask the Court to -- to -- withdraw, if that's possible, Your Honor.
>
> * * *
>
> Judge Gill: All right. But * * * remind me * * * the mom showed up at the last hearing, right?
>
> Attorney Russ: Correct?
>
> Attorney Rapier: Yes.
>
> Judge Gill: And that's when we sent her down to screen, right?
>
> Attorney Rapier: Yes, Your Honor.
>
> Judge Gill: And then you've never had any contact with her since you were appointed?
>
> Attorney Russ: No. This would be the first hearing for me, Your Honor.

Feb. 25, 2019 Tr. at 4-6.

{¶ 9} The county's lawyer then brought up grandfather A.S.'s pending motion(s), and mother T.B.'s attorney acknowledged that it was pending. *Id.* at 6-7 (responding to FCCS attorney's mention that there was a "pending motion filed by grandfather in this case, [A.S.], I believe it is," T.B.'s attorney states "correct"). The FCCS attorney stated:

> That motion was filed November 15th [actually Nov. 5], 2018. At this time, service has not been perfected as to mother in that

> case as the court recalls. An attorney did appear on behalf of [A.S.] this morning. However, they did not reappear this afternoon. Since there is no service, this case has been continued several times since the date of filing, the Agency would request the Court dismiss [A.S.]'s motion and proceed today for the trial on the Agency's permanent custody motion.

*Id.*

{¶ 10} The judge then said "let's bring him in * * * since he has a motion, but he wasn't formally joined as a party, correct?" *Id.* After grandfather A.S. came in, the judge said:

> Sir, I've been informed that we don't have good service on your motion, which doesn't allow you to formally proceed on it today. You haven't been formally joined as -- as a party in this matter at this point in time. A lawyer did appear for you today, but says that since you aren't a party and your -- your motion is not -- we can't go forward on it at this point in time because you don't have service [and] that you're going to be called as a witness by Mr. Ryerson, I believe.

*Id.*

{¶ 11} Trial did proceed, but A.S. did not actually testify until the second trial day, which was March 18, 2019. At that time, A.S. appeared with counsel. The county's lawyer brought up A.S.'s motion:

> Attorney Rapier: * * * And just to confirm, it's my understanding that the Court did dismiss [A.S.]'s motion previously that was filed in July of 2018, for failure to prosecute as there was no service since that date, I'm just requesting to confirm that?
>
> Judge Gill: Yeah. I did dismiss his motion when he failed to prosecute last time, Mr. Smith.
>
> Mr. Smith: Your Honor, so [A.S.] was under the assumption that he actually served mother. He didn't go through proper process it was told, but he actually served mother and at court. It wasn't in the courthouse, he actually served her outside of it. He thought he actually gave service to mother, and he didn't. He contacted me a couple of weeks ago and told me he had a pretrial for permanent custody on his – his grandchildren's case. I didn't know it was actually set for a trial and that's why I presented myself as – his – his attorney. I would ask that he be allowed to proceed on his motion, Your Honor. He was

under the assumption that he actually did go through the proper process of actually serving mother. He did not. I − I wasn't sure whether this was a trial or pretrial; it was a trial, that's why I wasn't at the last hearing. I would ask the Court to allow [A.S.] to go forward on his motion for legal custody at this point, You Honor.

March 25, 2019 Tr. at 5-7.

{¶ 12} After the judge noted that "we're already two days into trial," and lawyer Smith for A.S. responded, "I understand," the judge continued:

I just don't think it is proper to reinstate a motion that was dismissed for failure to * * * serve. I certainly understand that he may have had thought that he had done everything that he needed to do, but that's not how our legal system works. And you have to go through the -- the proper proceedings with respect to that. That said, it was my understanding that somebody was gonna call him as a witness anyways * * * which gave me some comfort that I was going to be able to hear from him anyways because I do think it goes to the basis of the motion and whether or not there -- there's a less restrictive possibility. But that said, I'm not going to allow him to proceed on his motion at this time.

*Id.* at 7.

{¶ 13} The trial court granted FCCS's motion for permanent custody and divested T.B. and A.B. of their parental rights in the children. In its decision, the trial court stated that "Grandfather attempted to proceed on his own Motion to be joined and Motion for Custody, however, said Motion was dismissed for fail[ure] to perfect service as required by law." April 19, 2019 Decision and Judgment Entry at 7.

{¶ 14} Father A.B. and grandfather A.S. have filed appeals. A.B.'s sole assignment of error states: "The Court Below erred in failing to allow Paternal Grandfather to proceed on his Motion for Legal Custody of the minor children, as service was perfected under the applicable rules." Brief of Appellant A.B. at 3. However, A.B. does not have standing to appeal the trial court's denial of his father's motion to intervene. *In re M.D.*, 10th Dist. No. 18AP-786, 2019-Ohio-3674, ¶ 60 (mother lacked standing to appeal denial of sister's motion to intervene in permanent custody proceeding); *In re D.T.*, 10th Dist. No. 07AP-853, 2008-Ohio-2287, ¶ 8 (mother lacked standing to appeal denial of paternal second cousin's motion to intervene in permanent custody proceeding). Because a party "must

meet standing requirements to invoke the jurisdiction of the appellate court," we lack jurisdiction to consider A.B.'s assignment of error. We therefore dismiss his appeal. *See In re S.G.D.F.*, 10th Dist. No. 16AP-57, 2016-Ohio-7134, ¶ 11, citing *Ohio Contract Carriers Assn. v. Public Utils. Comm. of Ohio*, 140 Ohio St. 160, 161 (1942).

{¶ 15} Grandfather A.S. raises two assignments of error. The first is a challenge to the trial court's decision to award permanent custody of the children to FCCS: "The trial court's permanent custody decision is not supported by the manifest weight of the evidence and is not in the children's best interest." Brief on Behalf of Appellant [A.S.] at 9. A.S. argues, among other things, that he provides the only option that would allow the children to be cared for in one home (as opposed, potentially, to three). *Id.* at 21-22, 24.

{¶ 16} Again, we are faced with an assignment of error raised by a litigant without standing to assert it. "An appellant cannot raise issues on another's behalf, especially when that [other] party could have appealed the issues appellant posits." *In re D.T.*, 2008-Ohio-2287, ¶ 8. Grandfather A.S was denied his request to be made a party to this case. His son, A.B., is a party, but A.B. has appealed only the trial court's denial of Grandfather's attempt to proceed on his motion to intervene. *Compare, e.g., In re S.G.D.F.*, 2016-Ohio-7134 at ¶ 14 ("Mother and Aunt's assignments of error do not assert any claims on their own behalf, instead they assert issues solely on behalf of Father"). As with A.B.'s appeal, we lack jurisdiction to consider this assignment of error.

{¶ 17} We may, however, consider A.S.'s second assignment of error insofar as it relates to the denial of his motion to intervene. *In re J.W.*, 10th Dist. No. 06AP-864, 2007-Ohio-1419, ¶ 24 ("Although a person who was not a party to an action generally has no right of appeal, it is well-settled that a person who has attempted to intervene as a party does have standing to appeal."); *In re M.D.*, 10th Dist. No. 18AP-786, 2019-Ohio-3674, ¶ 60 ("Though A.W. was not a party in the juvenile court proceedings, she clearly had standing to appeal the adverse ruling on her motion to intervene as a party."). His second assignment of error asserts: "The trial court erred in refusing to find that appellant's legal custody motion had been served on the children's mother or refusing to continue the hearing to allow appellant to serve the motion." Brief on Behalf of Appellant [A.S.] at 24. Given the wording of this assignment and briefing in the context of the treatment by the trial court and counsel of A.S.'s motions as an integrated "motion" dismissed for lack of

service on T.B., we read this assignment to comprehend the trial court's denial of A.S.'s motion to intervene. *See* April 19, 2019 Decision and Judgment Entry at 7 ("Grandfather attempted to proceed on his own Motion to be joined and Motion for Custody, however, said Motion was dismissed for fail[ure] to perfect service as required by law").

{¶ 18} A.S. argues that because he personally served T.B. with his motion "when she was outside the courthouse," and further that (presumably) because her attorney had access to the court's electronic filing system and through his comments on February 25, 2019 showed that he "was aware that Appellant's Legal Custody Motion had been filed," T.B. received actual and constructive notice of the motion that complied with principles of due process. *Id.* at 25-26.

{¶ 19} Ohio Juvenile Rule 20 governs the "[s]ervice and filing of papers when required subsequent to filing of complaint." The rule mandates that "written motions, other than those which are heard ex parte, and similar papers shall be served upon each of the parties." Juv.R. 20(A). As for the manner of service, Juv.R. 20(B) states: "Service upon the attorney or upon the party, and proof of service, shall be made in the manner provided in Civ.R. 5 (B)." Proof of service under Civ.R. 5(B)(4) requires that "[t]he served document shall be accompanied by a completed proof of service which shall state the date and manner of service, specifically identify the division of Civ.R. 5 (B)(2) by which the service was made, and be signed in accordance with Civ.R. 11." The rule also is clear in specifying: "Documents filed with the court shall not be considered until proof of service is endorsed thereon or separately filed." Civ.R. 5(B)(4). *See also* Juv.R. 20(B) ("Papers filed with the court shall not be considered until proof of service is endorsed thereon or separately filed").

{¶ 20} Service according to Civ.R. 5 was also required by the type of motion A.S. filed. To reiterate, he actually filed two motions on November 5, 2018: one captioned "Motion to Add New Party," and another captioned "Motion for Legal Custody." We consider the first a motion to intervene under Civ.R. 24. *See In re Adoption of T.B.S.,* 4th Dist. No. 07CA3139, 2007-Ohio-3559, ¶ 8 (appellant's "motion requesting the court to make him a party to the case and to allow his counsel to participate in the proceedings essentially amounted to a motion to intervene" under Civ.R. 24). The second motion, for legal custody, was available at that juncture only to a party; that is, to pursue the second motion depended on gaining approval of the first. *See, e.g., In re D.S.,* 9th Dist. No. 24553,

2009-Ohio-4658, ¶ 12 (in a proceeding for permanent custody after a dispositional hearing, "a person must successfully intervene in a legal custody matter to attain party status"; grandmother could appeal denial of motion to intervene, but not denial of legal custody); *see also* Juv.R. 2(Y) (defining "party" not to include non-custodial grandparent of a child with adult parents, unless so designated by the court).

{¶ 21} The procedure for filing a motion to intervene is set forth in Civ.R. 24(C), which states that "[a] person desiring to intervene shall serve a motion to intervene upon the parties as provided in Civ.R. 5." "If a party is represented by an attorney," as T.B. was later, service under Civ.R. 5 "shall be made on the attorney unless the court orders service on the party." Civ.R. 5(B)(1). "Whenever a party is not represented by an attorney," as T.B. was not at the time A.S. filed the motion, Civil Rule 5 requires that service "be made upon the party." *Id.* Civ.R. 5(B)(2)designates a variety of means for serving a person, including but not limited to "by * * * handing it to the person."

{¶ 22} The trial court appears to have conceived that, as argued by the lawyer for FCCS, it dismissed the motions on February 25, 2019. *See* March 18, 2019 Tr. at 6 ("I did dismiss his motion"). And having dismissed it, the court did not think it "proper to reinstate [the] motion." *Id.* at 7. The trial court appears also to have adopted the view of the FCCS attorney when she asserted on February 25, 2019 that "service ha[d] not been perfected as to mother," and on March 18, 2019 that "there was no service," each time providing the trial court with inaccurate dates of the filing of the motions ("the motion was filed November 15th, 2018" and "just to confirm, it's my understanding that the Court did dismiss [A.S.]'s motion previously that was filed in July of 2018").

{¶ 23} A.S.'s attorney told the trial court that A.S. had "actually served mother and at court. It wasn't in the courthouse, he actually served her outside of it. He thought he actually gave service to mother, and he didn't." March 18, 2019 Tr. at 6. We note that T.B. had appeared on November 26, 2018, the date set for trial that also was marked as the hearing date on A.S.'s Notice of Hearing form as filed November 5, 2016; T.B. signed both the continuance order and the separate November 26th Waiver of Service of Summons and Notice of Hearing document (which did not specifically recite the nature of the motion hearing(s) contemplated therein). But for A.S.'s motions, including the motion to intervene,

no proof of service (even proof that did not "specifically identify the division of Civ.R. 5(B)(2) by which the service was made") was submitted in accordance with Civ.R. 5(B)(4).

{¶ 24} T.B.'s lawyer did confirm to the trial court on the first day of trial that he was aware of A.S.'s pending motion, as was his duty as appointed counsel for T.B. Feb. 25, 2019 Tr. at 6-7 (stating "correct" when FCCS refers to "pending motion filed by grandfather"); *see* Loc.R. 4(D) of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch ("Upon appointment the attorney * * * shall make reasonable efforts to become informed about the facts of the case and to contact all relevant persons"; appointed attorney must "[r]eview pleadings and other relevant court documents"). *See also Felouzis v. Cochran*, 8th Dist. No. 81457, 2003-Ohio-758, ¶ 14 ("new counsel had knowledge, whether actual or constructive, of the May 20 trial date when he filed his notice of appearance on April 10, 2002"); *Wilson v. Wilson*, 8th Dist. No. 86817, 2006-Ohio-4261, ¶ 11 (rejecting wife's argument that "because notice was sent prior to her new counsel's appearance in the case, the court was required to send [her] notice" under Civ.R. 75(L)).

{¶ 25} But contrary to the suggestion of the Brief of Appellant A.B. at 13 (which we consider for these purposes as in the nature of an amicus brief), we cannot deem service to have been effected through subsection C(1) of section XI of the Second Amended Administrative Order of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, which says that "E-Service of an electronically filed document shall be deemed complete when the registered user receives the 'Notice of Electronic Filing' through the e-Filing system, notifying said user that the specific document has been e-Filed." T.B. was not represented by counsel when grandfather A.S. filed his motion to intervene; no Notice of Electronic Filing linked with that document is reflected in the docket; and we do not understand that T.B.'s later-appointed counsel would have received such Notice (as opposed to having access to the motion itself). And again, the motion to intervene bears no certificate of service reflecting service on T.B.

{¶ 26} Although we would not have looked askance had the trial court afforded grandfather A.S. some limited further opportunity to achieve (or certify) service, that did not happen. Nor did counsel for A.S. make such a request for even a brief continuance at that stage of the proceedings to confirm service. *See* March 18, 2019 Tr. at 6-7 (Attorney Smith: [despite a lack of confirmed service,] "I would ask that [A.S] be allowed to proceed

on his motion." Judge Gill: "Well, we're already two days into trial." Attorney Smith: "I understand").

{¶ 27} The standard for review of a trial court's determination of a motion to intervene is abuse of discretion. *See, e.g., State ex rel. N.G. v. Cuyahoga Cty. Court of Common Pleas*, 147 Ohio St.3d 432, 2016-Ohio-1519, ¶ 21, citing *State ex rel. Merrill v. Ohio Dept. of Natural Resources*, 130 Ohio St.3d 30, 2011-Ohio-4612, ¶ 41. Under the dictates of Civil Rule 5, "[d]ocuments filed with the court shall not be considered until proof of service is endorsed thereon or separately filed." Civ.R. 5(B)(4). Therefore, and especially in light of the statements by counsel for A.S. on the second day of trial seemingly conceding that service had not been accomplished—"He thought he actually gave service to the mother, and he didn't," and "he was under the assumption that he actually did go through the proper process of actually serving mother. He did not." March 18, 2019 Tr. at 6—we conclude that the trial court did not abuse its discretion in dismissing the motion to intervene (along with the custody motion) based on lack of service. *Compare, e.g., Cleveland Constr., Inc. v. Kent State Univ.*, 10th Dist. No. 09AP-822, 2010-Ohio-2906, ¶ 34 ("Kent State not only failed to challenge the Article 6 notices before the trial court, it conceded that it received the Article 6 notices, thus removing the issue from the realm of contention"). We overrule A.S.'s second assignment of error.

{¶ 28} Having dismissed A.B.'s appeal, and having found with regard to A.S.'s assignments of error that we lack jurisdiction to consider the first and that the second is overruled, we affirm the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch.

*Judgment affirmed.*

KLATT, P.J., and LUPER SCHUSTER, J., concur.

———————————————